# United States Court of Appeals for the Federal Circuit

04-5051


LAURA WILSON, Personal Representative
of the Estate of MAX WILSON, Deceased,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Frank Mafrice, Sommers, Schwartz, Silver & Schwartz, P.C., of Southfield, Michigan, for appellant. With him on the brief was Patrick Burkett.

Marla Conneely, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Brian M. Simkin, Assistant Director, and Richard S. Ewing, Trial Attorney.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

04-5051

LAURA WILSON, Personal Representative
of the Estate of MAX WILSON, Deceased,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED:  April 21, 2005

---

Before LOURIE, SCHALL, and LINN, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Plaintiff-Appellant Laura Wilson is the personal representative of the estate of her deceased husband, Max Wilson.  Prior to his death, Mr. Wilson received medical services that were paid for by Medicare.  Following his death, Mr. Wilson's estate brought a medical malpractice action against a hospital and two doctors.  After the estate settled the action and received payment from the defendants, the Department of Health and Human Services ("HHS"), on behalf of Medicare, claimed entitlement to a portion of the settlement.  Ms. Wilson, on behalf of the estate, paid the claim and then

filed suit in the United States Court of Federal Claims to recover the payment. In the suit, she contended that the government's claim against her husband's estate was improper and therefore constituted an illegal exaction. Ms. Wilson now appeals the decision of the Court of Federal Claims that dismissed her suit for lack of jurisdiction. Wilson v. United States, 58 Fed. Cl. 760 (2003) ("Order"). The court ruled that it lacked jurisdiction under the Tucker Act because Ms. Wilson's claim[1] arose under the Medicare statutes and because jurisdiction over such a claim is vested exclusively in federal district court. We affirm.

BACKGROUND

I.

Some background will help the reader to understand the issue in this case. Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 et seq.,[2] commonly known as the Medicare Act, established the Medicare program. See Heckler v. Ringer, 466 U.S. 603, 605 (1984). Medicare is a system of federally funded heath insurance for the aged, the disabled, and people suffering from end-stage renal disease. See Health Ins. Ass'n of Am., Inc. v. Shalala, 23 F.3d 413, 414 (D.C. Cir. 1994). It is administered by the Centers for Medicare and Medicaid Services, a subunit of HHS, formerly known as the Health Care Financing Administration.[3] United States v. Baxter Int'l, Inc., 345 F.3d 886, 873 n.2 (11th Cir. 2003). Part A of the Medicare Act, 42

---

[1]    For ease of reference, we refer to the claim that Ms. Wilson brought as the personal representative of the estate of her deceased husband as "Ms. Wilson's claim."

[2]    Unless otherwise indicated, all statutory references are to the 2000 version of the United States Code.

[3]    For convenience, we refer to the United States in this case as "HHS," "the Secretary," "Medicare," or "the government," as the context requires.

U.S.C. § 1395c <u>et</u> <u>seq.</u>, provides insurance for the cost of hospital and related post hospital services. Part B of the Act provides for voluntary coverage for the cost of medical services, e.g., physicians' fees, through private health insurance carriers. 42 U.S.C. § 1395j <u>et</u> <u>seq.</u>

For the first fifteen years, Medicare paid for medical services without regard to whether they were also covered by an employer group health plan. <u>Health Ins. Ass'n</u>, 23 F.3d at 414. However, in 1980, Congress enacted a series of amendments, commonly referred to as the Medicare Secondary Payer ("MSP") provisions, which were designed to make Medicare a "secondary payer" with respect to such a plan. <u>New York Life Ins. Co. v. United States</u>, 190 F.3d 1372, 1373-74 (Fed. Cir. 1999) (citing <u>Health Ins. Ass'n</u>, 23 F.3d at 414). The MSP statute provides, in relevant part, as follows:[4]

**(2) Medicare secondary payer**

**(A) In general**

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that –
(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1),[5] or
(ii) payment has been made or can reasonably be expected to be made promptly (as determined in accordance with regulations) under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insurance plan) or under no fault insurance.

---

[4] In this opinion, we refer to the MSP provisions as they existed prior to the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, 117 Stat. 2066. The changes made by that legislation are not pertinent to this case.

[5] Paragraph (1) of 42 U.S.C. § 1395y(b) covers, <u>inter</u> <u>alia</u>, the payment of benefits by group health plans.

> In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.

42 U.S.C. § 1395y(b)(2)(A). In the event that Medicare is not reimbursed for a conditional payment with respect to a medical item or service, "the United States may bring an action against any entity which is required or responsible (directly as a third-party administrator, or otherwise) to make payment with respect to the . . . item or service (or any portion thereof) under a primary plan." Id. § 1395y(b)(2)(B)(ii). Finally, under the MSP provisions, the United States is subrogated (to the extent Medicare makes payment for a medical item or service) to "any right . . . of an individual or any other entity to payment with respect to such item or service under a primary plan." Id. § 1395y(b)(2)(B)(iii).

Thus, if a Medicare recipient has medical insurance provided through a "primary plan," Medicare is precluded from paying for medical services except to provide secondary coverage. Put another way, "Medicare serves as a backup insurance plan to cover that which is not paid for by a primary insurance plan." Thompson v. Goetzmann, 337 F.3d 489, 496 (5th Cir. 2003). As the Court of Federal Claims observed, "[m]edical care thus is secured for a Medicare-eligible person whose care is covered by an insurer that should be the primary payer, but has not resolved the claim timely enough to pay for the medical care at the time payment is due." Order, 58 Fed. Cl. at 761.

Judicial review of claims arising under the Medicare Act is pursuant to 42 U.S.C. § 405(g), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii[6] and which provides, in relevant part, as follows:

**(g) Judicial review**

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. . . .

Section 405(h) of Title 42 provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided." It also provides that "[n]o action against the United States, the [Secretary,] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter [i.e., the Medicare Act]." 42 U.S.C. § 405(h).

---

[6] Section 1395ii provides in relevant part: "The provisions of . . . [42 U.S.C. § 405] . . . shall also apply with respect to [the Medicare Act] to the same extent as they are applicable with respect to [the Social Security Act], except that, in applying such provisions with respect to [the Medicare Act], any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human services, respectively.

Finally, before bringing suit pursuant to 42 U.S.C. § 405(g), an individual must exhaust administrative remedies. Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 20 (2000); Ringer, 466 U.S. at 627; Weinberger v. Salfi, 422 U.S. 749, 762 (1975). Administrative remedies are provided by 42 U.S.C. §§ 1395ff and gg. Section 1395ff provides that an individual dissatisfied with an "initial determination" with respect to a claim for benefits is entitled to reconsideration of the determination and a hearing, and after such a hearing, "to judicial review of the Secretary's final decision . . . as is provided in section 405(g) of this title." 42 U.S.C. § 1395ff(b)(1)(A). Section 1395gg provides that the Secretary may review a decision to seek reimbursement of an incorrect Medicare payment from an individual. It further provides that the Secretary shall waive recovery when an individual is "without fault," when "recovery would defeat the purposes of [the Medicare Act]," or when recovery "would be against equity or good conscience." Id. § 1395gg(c).

We now turn to the facts of this case.

## II.

In April of 2000, Ms. Wilson, as the personal representative of the estate of her deceased husband, Max Wilson, filed a medical malpractice action in state court in Michigan against the Genesys Regional Medical Center and two doctors who had treated her husband prior to his death. Eventually, Ms. Wilson settled the case for $160,000. Subsequently, on June 20, 2002, in a letter to Ms. Wilson's attorney, HHS formally asserted a claim for reimbursement against the settlement. HHS stated that Medicare had made payments for Mr. Wilson's care in the amount of approximately $126,000 under Medicare Part A and in the amount of approximately $21,000 under

Medicare Part B. In seeking reimbursement, HHS discounted the total amount of the payments by the estimated amount of Ms. Wilson's attorney fees and the expenses incurred in pursuing the malpractice action. This resulted in a claim by HHS in the amount of $88,744.72. The asserted basis for seeking reimbursement from the estate was that HHS was entitled to repayment for conditional payments made by Medicare on behalf of Mr. Wilson under the MSP provisions discussed above, in particular 42 U.S.C. § 1395y(b)(2)(B)(i). After indicating the circumstances under which HHS would waive reimbursement of an overpayment under the MSP provisions, HHS stated: "Your client may appeal our decision if: he/she disagrees that they received an overpayment; or they disagree with the amount of the overpayment; or they disagree with our decision not to waive their repayment of the overpayment." In that regard, HHS advised Ms. Wilson's attorney as to the time periods for submitting an appeal (60 days with respect to Part A services, 6 months with respect to Part B services) and as to where the appeal should be submitted (Medicare Part A Intermediary, PO Box 12201, Roanoke, Virginia 24023-2201). Ms. Wilson did not appeal to the fiscal intermediary. Rather, on December 6, 2002, she settled the claim for reimbursement by paying HHS the sum of $48,277.33.

III.

On March 24, 2003, Ms. Wilson filed suit in the Court of Federal Claims, seeking to recover the $48,277.33 she had paid HHS. In her suit, she alleged that the government, through HHS, had effected an illegal exaction because it had engaged in a wrongful assertion of statutory power under the MSP provisions. Ms. Wilson asserted that the Court of Federal Claims had jurisdiction over her claim under the Tucker Act, 28

U.S.C. § 1491(a)(1). In due course, the government moved to dismiss the suit for lack of jurisdiction. The government argued that the Court of Federal Claims lacked jurisdiction because Congress had explicitly provided that the federal district courts are the exclusive judicial fora for issues related to the coverage and payment provisions of the Medicare Act and because Ms. Wilson had failed to exhaust her administrative remedies.

On December 4, 2003, the Court of Federal Claims granted the government's motion to dismiss. Order, 58 Fed. Cl. at 760. The court concluded that Ms. Wilson's claim arose under the Medicare Act and thus was covered by 42 U.S.C. § 405(h). Id. at 765. The court reasoned that although Tucker Act jurisdiction is not expressly precluded by the third sentence of section 405(h),[7] section 405(g) vests judicial review of any claims arising under the Medicare Act exclusively in federal district court. The court also concluded that section 405(g) barred judicial review of Ms. Wilson's claim because she had failed to exhaust her administrative remedies by seeking either a waiver from the Secretary or review of the agency's determination to seek reimbursement from the estate pursuant to the procedures prescribed in the Medicare Act. Id. at 765-66. In that regard, the court pointed to the provisions of 42 U.S.C. §§ 1395ff and gg noted above.

Ms. Wilson timely appealed the court's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

---

[7] The third sentence of 42 U.S.C. § 405(h), which is quoted above, reads as follows: "No action against the United States, the [Secretary,] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter [i.e., the Medicare Act]."

DISCUSSION

I.

Whether the Court of Federal Claims properly dismissed Ms. Wilson's complaint for lack of subject matter jurisdiction is a question of law that we review de novo. W. Co. of N. Am. v. United States, 323 F.3d 1024, 1029 (Fed. Cir. 2003). Ms. Wilson asserted subject matter jurisdiction in the Court of Federal Claims under the Tucker Act, which provides as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

A claim may be asserted under the Tucker Act "for recovery of monies that the government has required to be paid contrary to law." Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996). Such a claim may be maintained when the "plaintiff has paid money over to the Government, directly or indirectly or in effect," and seeks return of all or part of the money on the ground that it was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007 (Ct. Cl. 1967). However, an illegal exaction claim may not be asserted in the Court of Federal Claims under the Tucker Act when "Congress has expressly placed jurisdiction elsewhere." Aerolineas Argentinas, 77 F.3d at 1573 (quoting S. Puerto Rico Sugar Co. Trading Corp. v. United States, 334 F.2d 622, 626 (Ct. Cl. 1964)). As we have explained,

04-5051                                  9

"[w]hen . . . a 'specific and comprehensive scheme for administrative and judicial review' is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted." Vereda, Ltda v. United States, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549-50 (Fed. Cir. 1994), and citing United States v. Fausto, 484 U.S. 439, 454-55 (1998); Appalachian Reg'l Healthcare, Inc. v. United States, 999 F.2d 1573, 1577 (Fed. Cir. 1993)).

St. Vincent's Medical Center is of particular relevance to this case, because, in that case, we found preemption of Tucker Act jurisdiction by certain provisions of the Medicare Act, albeit not the provisions at issue here. St. Vincent's Medical Center, a hospital, sought reimbursement for electricity costs it had incurred in providing services to Medicare beneficiaries. 32 F.3d at 547. St. Vincent's filed a request with HHS for a retroactive payment after it belatedly became liable for un-metered electricity costs. After HHS's intermediary reviewing agency denied the request, St. Vincent's filed an appeal with HHS's Provider Reimbursement Review Board ("PRRB"), pursuant to 42 U.S.C. § 1395oo.[8] Id. Before the PRRB issued a ruling on its claim, however, St. Vincent's filed suit in the Court of Federal Claims. Id.

According to 42 U.S.C. § 1395oo(a), "a provider seeking judicial review of a denial of reimbursement must first bring its claim before the PRRB." St. Vincent's, 32 F.3d at 549. Section 1395oo(f)(1) provides for judicial review in federal district court of

---

[8]     Section 1395oo(a) provides in relevant part that "[a]ny provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board . . . ."

matters that are adjudicated on their merits by the PRRB and of those matters that the PRRB has certified for expedited judicial review.  Id.  In St. Vincent's, we held that Tucker Act jurisdiction was preempted because Congress had provided a specific and comprehensive scheme for administrative and judicial review of Medicare reimbursement claims of the kind asserted by St. Vincent's.  Id. at 549-50.  We stated: "Only where Congress has not specified procedures for review of Medicare reimbursement claims can those claims be entertained under the Tucker Act."  Id. at 550.  Further, we emphasized: "[42 U.S.C. § 405(h),] read in conjunction with 42 U.S.C. § 1395ii, unequivocally provides that 'no action' arising under the Medicare Act shall be brought in any forum or before any tribunal that is not specifically provided for in the Medicare Act."  Id.  In short, if a claim arises under the Medicare Act, it may not be pursued in the Court of Federal Claims.[9]  With the legal framework in place, we turn to the parties' contentions on appeal.

II.

Ms. Wilson argues that the Court of Federal Claims erred in dismissing her complaint for lack of jurisdiction.  She contends that she presented an illegal exaction claim within the court's Tucker Act jurisdiction.  In Ms. Wilson's words: "[T]he Government made a lawless demand for reimbursement from a separate, tort settlement for the amounts previously paid as Medicare benefits, claiming a right of reimbursement under the MSP provisions of the Medicare Act, particularly, 42 U.S.C.

_____

[9]     When we refer here to claims "arising under" the Medicare Act, we refer to claims for which specialized administrative review under 42 U.S.C. § 1395ff and judicial review under 5 U.S.C. § 405(g) are available.  We do not suggest that the application of 5 U.S.C. § 405(h) precludes judicial review through other avenues in cases where the

§ 1395y(b)."  (Br. of Appellant at 14.)  Recognizing the exception to Tucker Act jurisdiction over an illegal exaction claim stated in <u>Aerolineas Argentinas</u> and other cases, Ms. Wilson contends that her claim does not fall within the exception because Congress has not "expressly placed jurisdiction elsewhere."  She urges that her claim did not arise under the Medicare Act because there was no dispute regarding Mr. Wilson's eligibility for Medicare benefits and because the government has never claimed that it overpaid or has been overcharged for Medicare benefits.  In addition, Ms. Wilson states that "the Government has no right to repayment of the amount of Medicare benefits paid, from a third-party tort recovery, because the Defendants/tortfeasors, in such cases, are not insurance 'plans' or self-insurance 'plans' within the meaning of 42 U.S.C. § 1395y(b)."  (Br. of Appellant at 16.)  Under these circumstances, she asserts, there was no administrative remedy available to her under either 42 U.S.C. § 1395ff or 1395gg.  Ms. Wilson states that because her claim does not implicate a dispute regarding the amount of benefits to which Mr. Wilson was entitled, the Secretary has not made an "initial determination" under section 1395ff.  At the same time, she argues that section 1395gg relates only to the recovery of incorrect payments, i.e., when "more than the correct amount is paid" as Medicare benefits.[10]  Thus, Ms.

_____

(Cont'd. . . .)
specialized administrative and judicial review processes provided in the statute are not available.

[10]    Section 1395gg provides, in relevant part, as follows:

**(b) Incorrect payments on behalf of individuals; payment adjustment**

Where—
**(1)** more than the correct amount is paid under this subchapter to a provider of services or other person for items or services furnished an

Wilson argues that while the statutory scheme of the Medicare Act requires that all aspects of a present or future claim for benefits be channeled through the administrative process, the administrative scheme was not intended to address her claim, because it did not arise under the Medicare Act. Finally, Ms. Wilson urges that, even if her claim could properly be viewed as arising under the Medicare Act, she should not be required to exhaust the administrative remedies set forth in the Act. According to Ms. Wilson, the exceptions to the exhaustion doctrine recognized by the Supreme Court in McCarthy v. Madigan, 503 U.S. 140 (1992), apply to her case.

For its part, the government argues that the Court of Federal Claims did not err in dismissing Ms. Wilson's complaint for lack of jurisdiction. The government characterizes Ms. Wilson's action as a challenge to the right of Medicare to recover from tort liability settlements any conditional payments made on the beneficiary's behalf. Under these circumstances, the government argues, any court adjudicating Ms. Wilson's claim would have to "analyze the full scope and extent of a Medicare beneficiary's entitlement to benefits and interpret the MSP provisions of the Medicare Act." (Br. of Appellee 14-15.) Consequently, according to the government, Ms. Wilson's claim must be viewed as arising under the Medicare Act. As a result, Ms. Wilson was required to exhaust her administrative remedies under the Medicare Act

_____

(Cont'd. . . .)

    individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount, . . . proper adjustments shall be made, under regulations prescribed . . . by the Secretary, by decreasing subsequent payments . . . .

42 U.S.C. § 1395gg(b).

and then proceed to district court, neither of which she did.  The government concludes by urging that Ms. Wilson's argument that it would be futile for her to pursue administrative remedies is without merit.  The government contends that the exceptions to the exhaustion requirement upon which Ms. Wilson relies are inapposite.

III.

The Supreme Court has addressed the "arising under" issue.  In <u>Weinberger v. Salfi</u>, 422 U.S. 749, 762 (1975), a deceased wage earner's widow, who represented a class, appealed the Social Security Administration's denial of her application for survivor's benefits for herself and for her daughter, asserting jurisdiction in federal district court under 28 U.S.C. § 1331, the general federal question statute.[11]  The Court began its analysis by noting that the third sentence of section 405(h), "[o]n its face, . . . bars district court federal-question jurisdiction over suits, such as this one, which seek to recover Social Security benefits."  <u>Id.</u> at 756-57.  The Court went on to explain that the third sentence of section 405(h) amounts to more than a codification of the doctrine of administrative remedies.  The Court stated that it provides that "no action [arising under the Social Security Act] shall be brought under section 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted."  <u>Id.</u> at 758.  The Court also determined that because Salfi's action arose under the Social Security Act, "the third sentence of § 405(h) preclude[d] resort to federal-question jurisdiction for the adjudication of [Salfi's] constitutional contentions."  <u>Id.</u> at 761.  This was the case because the Social Security Act "provide[d] both the standing and

---

[11]  **§ 1331.  Federal question**
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

substantive basis for the presentation of [the] constitutional contentions." Id. Thus, the Court concluded that section 405(g), to the exclusion of section 1331, is the sole avenue for judicial review for all claims "arising under" the Social Security Act. Id. at 760-61.

In Heckler v. Ringer, 466 U.S. 603, 605 (1984), the Supreme Court extended the holding of Salfi to the Medicare Act. In Ringer, four Medicare beneficiaries brought an action challenging the Secretary's policy and ruling that no Medicare payments would be provided for a particular surgical procedure, alleging that the policy and ruling violated the Medicare Act, the Administrative Procedure Act, and the Constitution's Due Process Clause. 466 U.S. at 611 n.7. The Court found the plaintiffs' constitutional claim to be "inextricably intertwined" with their claim for benefits. Id. at 614. Thus, the Court held that the claim arose under the Medicare Act, and that "all aspects of respondents' claim for benefits should be channeled first into the administrative process which Congress has provided for the determination of claims for benefits." Id.

IV.

As seen, Ms. Wilson's contention is that HHS's demand for reimbursement was unlawful because it was contrary to the MSP provisions of the Medicare Act. Ms. Wilson's argument is that HHS's demand upon her husband's estate was unlawful because Medicare had not made an overpayment or an incorrect payment on her husband's behalf and because, as far as the MSP provisions are concerned, the defendants in the malpractice action did not constitute a "plan" or a self-insured "plan" under 42 U.S.C. § 1395y(b)(2)(A). This argument implicates the meaning and scope of various provisions of the Medicare Act. For this reason, we think Ms. Wilson's claim

presents precisely the kinds of questions that are meant to be addressed under the scheme for administrative and judicial review that is contemplated by the Act: what a given provision of the Act means and what conduct is covered by that provision. In other words, we think the Act provides both the "standing and substantive basis" for Ms. Wilson's claim. At the same time, we think it can fairly be said that Ms. Wilson's illegal exaction claim is "inextricably intertwined" with both the claim of HHS relating to the Medicare benefits that were paid to Mr. Wilson and Ms. Wilson's challenge to HHS's claim. Thus, if Ms. Wilson was dissatisfied with HHS's determination that the receipt of proceeds from the malpractice settlement constituted an overpayment, she had available to her the administrative review process provided by the Medicare Act.

We already have mentioned 42 U.S.C. § 1395ff(b)(1)(A) in our discussion of the Medicare scheme in the BACKGROUND section of this opinion. More specifically, that section provides, in relevant part, as follows:

> [A]ny individual dissatisfied with any initial determination under [42 U.S.C. § 1395ff(a)(1)] shall be entitled to reconsideration of the determination, and . . . a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

42 U.S.C. § 1395ff(b)(1)(A). Section 1395ff(a)(1) provides in turn that "[t]he Secretary shall promulgate regulations and make initial determinations . . . in accordance with those regulations" with respect to:

> (A) The initial determination of whether an individual is entitled to benefits under [Medicare Part A or Part B].
> (B) The initial determination of the amount of benefits available to the individual under such parts.
> (C) Any other initial determination with respect to a claim for benefits under such parts . . . .

Id. § 1395ff(a)(1). Pursuant to 42 C.F.R. § 405.704 (2002), a decision of the Secretary is an "initial determination" if it involves an issue

> having a present or potential effect on the amount of benefits to be paid under Part A of Medicare, including a determination as to whether there has been an overpayment or underpayment of benefits paid under Part A, and if so, the amount thereof.

42 C.F.R. § 405.704(b)(13).

Ms. Wilson argues that these provisions do not provide her an administrative remedy because they are limited to disputes over Medicare "benefits." She argues that her dispute is not about Medicare benefits at all. We disagree. We think her request for repayment of the portion of the settlement she paid to the government is a request for Medicare benefits within the meaning of section 1395ff and the corresponding regulations. Ms. Wilson paid the government but now seeks to recover that money. This is essentially a claim contesting the agency's initial determination that it overpaid benefits to Mr. Wilson, and is thus a claim for benefits. See Buckner v. Heckler, 804 F.2d 258, 260 (4th Cir. 1986) ("Buckner's claim that she is entitled to the overpayment is, in essence, one for medicare benefits."). We thus agree with the Court of Federal Claims that Ms. Wilson failed to exhaust all available administrative remedies. As the court correctly noted, Order, 58 Fed. Cl. at 766, under section 405(g), it is only through the relevant administrative procedures that a plaintiff may seek judicial review, and even then only in federal district court.

Ms. Wilson argues, however, that because what HHS did was contrary to the Medicare Act, the scheme for administrative and judicial review under the Act does not apply. Acceptance of Ms. Wilson's argument would subvert the carefully crafted

scheme that Congress created in the Act. That is because it would mean that whenever a Medicare claimant disagreed with agency action on the ground that the action was contrary to statute (even if the question turned on the meaning of a statutory provision), he or she could opt out of the administrative review process. Not only would that be an illogical result, but the Supreme Court has made it clear that "Congress, in both the Social Security Act and the Medicare Act, insisted upon an initial presentation to the agency." Ill. Council, 529 U.S. at 20 (citing Ringer, 466 U.S. at 627; Salfi, 422 U.S. at 762).

V.

The issue before us today is one of first impression for this court. That said, our determination that Ms. Wilson's claim arises under the Medicare Act is consistent with the rulings of two other circuits.

Fanning v. United States, 346 F.3d 386 (3d Cir. 2003), arose out of a class action settlement pertaining to orthopedic bone screws manufactured by AcroMed Corporation. AcroMed began manufacturing bone screw devices for use in spinal fusion surgery beginning in 1983. By the early part of the 1990s, thousands of individuals who had undergone spinal fusion surgery had experienced complications and infirmities that they alleged were caused by the bone screws, resulting in a "flood" of product liability suits against AcroMed. In due course, the Judicial Panel on Multidistrict Litigation transferred all of the pending cases to the United States District Court for the Eastern District of Pennsylvania. Id. at 390. Thereafter, Daniel Fanning, acting as a class representative, reached a settlement with AcroMed on behalf of the class. Pursuant to the terms of the settlement, AcromMed transferred $100 million into

a trust fund for distribution to class members who qualified for payment in accordance with a procedure to be established by the court. Id.

Eventually, HHS sought reimbursement from the settlement trust fund for Medicare payments that had been made to members of the settlement class for various medical expenses arising from injuries allegedly suffered as a result of using AcroMed bone screws. HHS asserted that it was entitled to payment under 42 U.S.C. § 1395y(b)(2). In response, Fanning filed suit in the district court under 28 U.S.C. § 1331 on behalf of himself and the class, seeking to enjoin the government from enforcing any of the rights asserted by HHS under the MSP provisions of the Medicare Act. Id.

The government moved to dismiss the suit for lack of jurisdiction, arguing that the class members were not entitled to judicial review because they had failed to exhaust their administrative remedies before bringing suit, as required by 42 U.S.C. § 405(h). Id. The district court denied the motion to dismiss, certified the class and entered a preliminary injunction barring the government from taking any action to obtain reimbursement from class members for Medicare payments. Id. at 391.

The government appealed the issuance of the preliminary injunction, and the Third Circuit reversed, ordering the complaint dismissed for lack of jurisdiction. Id. at 402. The court pointed out that the government's basis for seeking reimbursement from the settlement trust fund was that AcroMed, the alleged tortfeasor who created the trust fund, was a "self-insured plan" and was, therefore, the primary payer under the MSP. Id. at 400. The court determined:

> The essence of the claim asserted in Fanning's amended
> class action complaint is that the government is not entitled

04-5051                                  19

to recover Medicare overpayments from a fund created as a result of a settlement with an alleged tortfeasor because Congress never intended to treat a settlement trust fund as payments from a primary insurer under the MSP. We believe there may be force to Fanning's argument. However, the government's basis for seeking MSP reimbursement from the AcroMed settlement trust fund is that AcroMed is a "self-insured plan" and is, therefore the primary payer under the MSP. Accordingly, the claim asserted in the amended class action complaint is wholly dependent upon determining whether or not AcroMed is a "self-insured plan" and therefore, a "primary plan" under the MSP. It is thus apparent that both the standing and the substantive basis for the claim asserted in the amended class action complaint are rooted in, and derived from, the Medicare Act. Consequently, the claim is one "arising under" the Medicare Act and the third sentence of § 405(h) therefore deprived the district court of federal question jurisdiction. The AcroMed class settlement plaintiffs are thus required by § 405(h), as interpreted by Salfi, Ringer, and Illinois Council, to channel their claim through the agency.

Id. at 399-400 (footnote omitted).[12]

Also instructive, we think, is Buckner v. Heckler, 804 F.2d 258 (4th Cir. 1986). In that case, Evelyn Buckner incurred $20,845.45 in medical expenses as the result of an automobile accident. Medicare paid for $20,636.66 of the expenses. Subsequently, Buckner's private automobile insurance carrier paid the hospital $5,317.76, leaving an overpayment to the hospital of $5,108.97. The Secretary made a claim against the hospital for the overpayment pursuant to 42 U.S.C. § 1395y(b)(1). Buckner also claimed entitlement to the overpayment and filed a declaratory judgment action against the Secretary. The district court dismissed the action for lack of jurisdiction, and the Fourth Circuit affirmed, holding that Buckner had failed to exhaust her administrative

---

[12] "Moreover," the court added, "we note, but do not decide, that a reasonable argument can be made that the AcroMed class settlement members are in fact seeking benefits." Id. at 401 n.16.

remedies by presenting her claim for benefits to the Secretary. The court found <u>Ringer</u> to be dispositive and noted its holding that exhaustion of administrative remedies is required for all claims arising under the Medicare Act. <u>Id.</u> at 259. The court went on to explain that Buckner's claim that she was entitled to the overpayment was, in essence, one for Medicare benefits. <u>Id.</u> at 260. Thus, the court concluded that "[t]o permit Buckner to maintain a declaratory judgment action in this instance 'would allow [her] substantially to undercut Congress' carefully crafted scheme for administering the Medicare Act.'" <u>Id.</u> (quoting <u>Ringer</u>, 466 U.S. at 621).

Like the Third Circuit in <u>Fanning</u> and the Fourth Circuit in <u>Buckner</u>, we do not address the merits of Ms. Wilson's claim. Because the Medicare Act contains its own comprehensive administrative and judicial review scheme which was available to Ms. Wilson, "Congress has expressly placed jurisdiction elsewhere," and there is no Tucker Act jurisdiction over Ms. Wilson's claim. <u>Aerolineas</u>, 77 F.3d at 1573.

Ms. Wilson's reliance on <u>Thompson v. Goetzmann</u>, 337 F.3d 489, 496 (5th Cir. 2003), and <u>Mason v. American Tobacco Co.</u>, 346 F.3d 36 (2d Cir. 2003), is misplaced. In <u>Goetzmann</u>, Bernice Loftin underwent surgery to replace her hip joint with a prosthesis manufactured by Zimmer, Inc. When complications arose, Loftin was forced to undergo a second surgery. Medicare paid approximately $143,881.82 for the two surgeries. Subsequently, Loftin brought suit against Zimmer for product liability, and eventually the parties settled for the sum of $256,000. Loftin's attorney, Goetzmann, deducted his contingency fee and distributed the balance to Loftin. The government then proceeded to assert an independent right of recovery under the MSP provisions against Loftin, Goetzmann, and Zimmer, pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii). In

its suit, the government alleged that Zimmer was a "self-insured plan" under the MSP provisions by reason of its product liability settlement with Loftin. The district court dismissed the government's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. In so doing, the court held as a matter of law that Zimmer could not have paid for Loftin's medical services "promptly" as required by 42 U.S.C. § 1395y(b)(2)(A). The Fifth Circuit affirmed, but on the separate ground that Zimmer's settlement agreement with Loftin was not a "self-insurance plan" under section 1395y(b)(2)(A). 337 F.3d at 501. The court concluded that Zimmer was "simply an alleged tortfeasor" and that the government had failed to allege anywhere in the complaint that Zimmer paid Loftin according to a pre-existing primary plan of self-insurance. Id. at 504.

In Mason, the plaintiffs asserted a private right of action under the provision of the Medicare Act pursuant to which individuals may be awarded double damages against a primary plan that has wrongfully denied them payment for health care that has been paid for by Medicare. See 42 U.S.C. § 1395y(b)(3)(A). The plaintiffs alleged that the defendants, major producers of tobacco products, should have been the primary payers for the health care services needed to treat certain tobacco-related illnesses of Medicare beneficiaries. The district court dismissed the complaint, and the Second Circuit affirmed, holding that the defendants' status as accused tortfeasors did not convert them under the statute into primary plans or self-insured plans.

Neither Goetzmann nor Mason involved a jurisdictional issue, as is presented here: whether the trial court (in this case, the Court of Federal Claims) lacks jurisdiction over a plaintiff's claim because the claim arises under the Medicare Act and therefore is

subject to the specialized review procedures of the Act. Rather, Goetzmann and Wilson addressed the merits of whether particular plaintiffs (the government in Goetzmann, the individual plaintiffs in Mason) were entitled to recovery under the provisions of the Medicare Act at issue. Jurisdictional issues such as those presented here were not an issue in either case.

VI.

As noted above, Ms. Wilson argues that the exceptions to the exhaustion doctrine recognized by the Supreme Court in McCarthy v. Madigan, 503 U.S. 140 (1992), apply to her case. In McCarthy, the Court noted that "administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." 503 U.S. at 146 (quoting West v. Bergland, 611 F.2d 710, 715 (1979)). The Court went on to explain three sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion: (1) where there is an unreasonable or indefinite timeframe for administrative action; (2) where there is some doubt as to whether the agency is empowered to grant effective relief; and (3) where the administrative body is shown to be biased or has otherwise predetermined the issue before it. Id. at 146-49. We agree with the Court of Federal Claims that the exceptions to the exhaustion doctrine do not apply in Ms. Wilson's case. As the Supreme Court has recognized, Congress has insisted that matters arising under the Medicare Act be presented in the first instance to the agency. Ill. Council, 529 U.S. at 20; Ringer, 466 U.S. at 627 ("Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against

the potential for overly casual or premature intervention in an administrative system that processes literally millions of claims every year.").

## CONCLUSION

For the foregoing reasons, we agree with the Court of Federal Claims that the scheme for comprehensive administrative and judicial review set forth in the Medicare Act preempts Tucker Act jurisdiction over Ms. Wilson's claim for reimbursement.  We therefore affirm the Court of Federal Claims' dismissal of Ms. Wilson's suit for lack of jurisdiction.

Each party shall bear its own costs.

## AFFIRMED