**WAYNE COUNTY GENERAL HOSPITAL and County of Wayne, Plaintiff,**

v.

**Michael LEAVITT, Secretary of the Department of Health and Human Services, Defendants.**

No. CIV. 05–70317.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 4, 2007.

Seth M. Lloyd, Thomas J. McGraw, Dykema Gossett, Detroit, MI, for Plaintiff.

Derri T. Thomas, U.S. Attorney's Office, Detroit, MI, for Defendant.

### OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Wayne County General Hospital moves for summary judgment on its appeal from the Health and Human Services' decision limiting the size of the Medicare reimbursements for 1984. For the reasons below, I DENY Plaintiffs' motion for summary judgment and GRANT summary judgment to Defendant.

## FACTUAL BACKGROUND

Wayne County operated the Plaintiff hospital and received Medicare reimbursements for that work from 1967 until 1984, when the hospital was shut down. When the hospital shut down, the County was required to make a number of retirement, pension and unemployment payments for its employees, and Wayne County sought reimbursement for a portion of those payouts (classified as "indirect costs") from Medicare. The federal government's final decision assessed all those payout costs against the year 1984, resulting in a reimbursement amount of approximately $12 million. Wayne County wants this Court to require a different calculation method, in which the amount of those employee payouts are spread out over all the years the employees worked, and the reimbursement is calculated by how much the hospital would have received in reimbursement if the proportional payment had been made in each year of the employee's service. Wayne County's method would result in an additional reimbursement amount of $2,349,691.

Both sides agree that at the direction of Congress, the way hospitals were reimbursed by Medicare changed in December of 1983, to something called the "prospective payment system." Both sides appear to agree that under the previous system, the "reasonable cost reimbursement system," the method of figuring out how to bill these charges would have approximated Wayne County's proposed method, in which the government would divide a retirement payment by the years of service of that employee and calculate reimbursements as if the hospital had made a proportional payout in each of those previous years. The government, however, argues that the regulations issued as part of the prospective payment system require it to use a method in which all money paid out in 1984 is counted against 1984, resulting in the lower payment amount. Wayne County contends that the agency's current method is illegal, because it does not reflect the total cost of treating Medicare patients, and that its method should be used instead.

## PROCEDURAL HISTORY AND ANALYSIS OF DELAY

I asked the parties to submit briefing to this Court explaining why a dispute about a reimbursement for expenses paid in 1984 first appeared in federal court 20 years later. The short answer—irony intended—is that the administrative agency took approximately 20 years to arrive at a final decision regarding those payments. Plaintiffs were required by federal law to first bring a claim before the administrative agency and wait for adjudication on the merits or a certification of expedited review from the government before seeking judicial review in federal district court. 42 U.S.C. § 1395oo(a) & (f); *Wilson v. United States*, 405 F.3d 1002, 1009 (Fed.Cir.2005); *Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 441 (7th Cir. 2005). At least two circuits have indicated that extended delays for agency actions raise concerns that the government is acting illegally, so I think a review of what has happened over the last 20 years. *Smith v. Williams–Ash*, 173 Fed.Appx. 363, 366 (6th Cir.2005); *Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 663 (7th Cir.1995).

The government has set up a three-stage process for decision making on provider reimbursements: an intermediary makes the first decision, which can be appealed to the Provider Reimbursement Review Board (often called the PRRB, and hereinafter the Board), and the Board's decision can in turn be overruled by the Secretary of Health and Human Services or his designate.

## A. The Fiscal Intermediary (1984–1994)

The Plaintiff hospital closed in 1984, and it took the County until 1987 to fully liquidate the related costs—thus satisfying the three-year deadline in federal regulations. 42 C.F.R. § 2305.1. The county submitted its cost report to the "fiscal intermediary," which is a procedural step required by the federal government at which an audit is performed if necessary. By the fall of 1989, that intermediary had made its decision, called a Notice of Program Reimbursement. Therefore, the first five years of the matter are accounted for in that (1) Wayne County took three years to fully close the hospital's books and get all of its information to the government's designated intermediary (a time period sanctioned by law), and (2) the intermediary then took two years to audit that information and issue an initial decision.

In early 1990, the County appealed the intermediary's decision to the Board, which is the procedure specified by law for appeal of such decisions. 42 U.S.C. § 1395oo(a). This apparently caused the intermediary to reconsider its decision, and by 1992, the intermediary released a corrected decision that allowed some additional costs to be claimed, but did not specify the method by which the government would decide how much of those costs would be reimbursed. The intermediary's corrected decision let the County increase the amount of its claim, but did not determine the amount of money the government would pay on that claim. Despite the fact that the amount the government would pay was left unstated, the appeal Wayne County had filed before the Board was dismissed.

In July of 1993 (approximately a year after the appeal was dismissed), the intermediary recommended directly to the Medicare administrator that Wayne County's methodology for determining the amount of the reimbursement be used. Less than a month later, on August 11, 1993, the Medicare administrator wrote the intermediary saying there was no basis to use Wayne County's methodology. About a month later, yet another correction of the intermediary's decision was released in which Wayne County's proposed methodology was not used. (Admin. Record 660–65.)

Wayne County did not appeal that decision to the Board for six months, but both parties agree that period of time is procedurally acceptable. Therefore, the appeal was filed on March 15, 1994. (Admin. Record 848.)

## B. The Provider Reimbursement Review Board (1994—2004)

As the issues for appeal were being fleshed out, the intermediary filed a jurisdictional challenge, arguing the Board could not hear the appeal. (Joint Brief, 2.) Two months after the appeal was filed, the Board set out a briefing schedule for the jurisdictional challenge, and Wayne County turned in its brief on that topic by early January 1995. (Joint Brief, Exh. 1.) For reasons that are unclear in the record, the Board took no action of any kind for a year and eight months. *Id.* Finally, in September 1996, though jurisdiction remained undecided, the Board scheduled a hearing on the merits. (Joint Brief, 3.) The date it selected for that merits hearing, December 1999, was an additional three years away. *Id.*

In February of 1997, nearly two years after briefing on jurisdiction was completed, the Board found it had jurisdiction. (Admin. Record 667.) Little appears to happen after that until 1999, when there was a flurry of paper exchanges between the parties in which they attempted to hammer down a common statement of facts and get their position papers in or-

der. (Joint Brief 3–4.) Presumably, this flurry caused the Board to believe the hearing should be postponed, because instead of the hearing taking place in 1999, the Board rescheduled the hearing to December 2000. (Admin. Record 230–33.) The parties had another flurry of paper with proposed factual stipulations in 2000, but in early 2001, the Board rescheduled the hearing yet again, this time for February of 2001. (Admin. Record 226–29.) More flurries of paper involving stipulations ensued, and the Board rescheduled the hearing for the third and fourth times, setting dates of March of 2001 and May of 2001, respectively. (Joint Brief, 5.) Then, without an intervening flurry of paper, the fourth rescheduling occurred, moving the date until September 4, 2001. (Admin. Record 214–29.) In 2002, there was a renewed flurry of paper, and the Board rescheduled the hearing again, to October of 2002. (Admin. Record 204–209.) Apparently unhurried, the Board rescheduled the hearing yet again, this time to June 4, 2003. (Admin. Record 198–203.) There was a flurry of paper throughout 2003 regarding joint stipulations, and more than nine years after the appeal was filed, on June 4, 2003, the Board finally held a hearing on the merits. (Joint Brief, 6–7; Admin. Record 150.) Some additional briefs were filed in August of that year, and approximately a year after it held the hearing, the Board issued its final decision in favor of Wayne County on September 24, 2004. (Admin. Record 30.)

To sum up, it took more than 10 years for Wayne County to make it out of the intermediary stage of administrative review. No party objected to any of the many reschedulings, and they may even have requested them—federal regulations with the force of law allow the Board to reschedule hearings for "good cause" and neither party disputes that this was present in this case. 42 C.F.R. § 405.1849.

The County emerged from this decade with a Board decision in its favor.

## C. Final Agency Level: the Medicare Administrator (2004)

Less than a month after the decision came down, the government appealed the Board's decision to the highest authority in the agency's Medicare process—the Medicare administrator, who is the Secretary's designate for these decisions. Just as the administrator had stated in 1993, at which point the Board's interminable process began, the administrator again found that the law did not support the use of Wayne County's methodology. The decision overruling the Board was handed down in October of 2004. (Admin. Record 1.) At that point, Wayne County had exhausted its administrative process and filed suit in this Court in January 2005.

## D. Legal Effect of Delay

■ The government's brief acknowledges that having the Board take upwards of seven years to make a decision is not "unheard of." (Supp. Br. at 4.) Wayne County notes that it frequently takes hospitals and other Medicare providers over seven years to get a decision from the Board, and notes that in 2004, there were five decisions pending before the Board for more than seven years. (Pls.' Supp. Br. at 11.) Plaintiffs have not raised a due process claim in this case, and although the Supreme Court has allowed Fourteenth Amendment concerns to be raised *sua sponte*, it has only done so when the papers before the court raise the issue implicitly. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 37, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), citing *Batson v. Kentucky*, 476 U.S. 79, 84–85, n. 4, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("[N]otwithstanding petitioner's seemingly deliberate failure to raise the equal protection

issue, 'we agree with the State that resolution of petitioner's claim properly turns on application of equal protection principles[.]' ") Here, the papers did not raise a due process issue, nor a First Amendment issue alleging an abridgement of the right to petition the courts, and therefore, despite the appalling (and apparently not uncommon) delay by bureaucratic paperpushers, I will not consider it.

## ANALYSIS OF MAIN CLAIM

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The parties concede that there are no material facts at issue in this case, only questions of law, so summary judgment is appropriate at this time. The fact that the nonmoving party has not filed its own summary judgment motion does not preclude the entry of summary judgment in its favor if otherwise appropriate. *K.E. Resources, Ltd. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.)*, 119 F.3d 409, 412 (6th Cir.1997) (affirming the district court's sua sponte grant of summary judgment to a nonmoving party where the parties had fully briefed the determinative issue and had agreed that no factual dispute existed); *cited for this proposition by Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir.2000).

### B. Change in the Law

■ Wayne County argues that the agency's decision in this case violates the statute passed by Congress, in that it shifts costs that result from Medicare patients to others non-Medicare patients. This argument would doubtless have been successful had the Plaintiff Hospital closed a few months earlier, before the 1983 alteration in the reimbursement statute occurred. As explained below, however, when Congress changed the law to replace the "reasonable cost reimbursement" system with the "prospective payment system," it deliberately chose not to reimburse the providers for their actual cost of service, and therefore it was foreseeable that providers who could not supply services at the government's fixed cost would be required to bear the excess costs themselves. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 406, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) ("regardless of actual cost"), citing 42 U.S.C. § 1395ww(d); *Fischer v. United States*, 529 U.S. 667, 685, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000) ("the hospital, like any other private contractor, bears the risk of higher costs"); *see also Baptist Health v. Thompson*, 458 F.3d 768, 771 (8th Cir.2006) (Under the prospective payment system, a provider hospital receives Medicare reimbursement at a flat rate for each patient based on the patient's category of treatment), citing H.R.Rep. No. 98–25, at 132 (1983), reprinted in 1983 U.S.C.C.A.N. 219, 351.

The statute at issue is 42 U.S.C. § 1395f(b)(1), which authorizes the Health and Human Services Department to pay hospitals for the "reasonable cost" of services or alternatively, the "customary cost" of services, whichever is less. "Reasonable cost" is further defined in 42 U.S.C. § 1395x(v)(1)(A), as "the cost actually incurred [excluding unnecessary costs], and shall be determined in accordance with regulations establishing the *method or methods to be used.*" (Emphasis mine.) The regulation also clearly notes that the Department can consider *"different meth-*

*ods* for different circumstances." *Id.* (Emphasis mine.) The definition goes on to list a number of factors that must be considered by the Department in setting its regulations regarding those methods, including "indirect costs of providers of services," but specifically provides that the method used may include the establishment of limits on the size of indirect costs. *Id.* at (i).

Plaintiffs argue that using the government's method, in which none of the costs are assumed to have been accrued in past years, essentially forces the costs associated with having caregivers to Medicare patients borne by non-Medicare patients, in violation of the statute. However, I do not find this argument persuasive, because it ignores the clear statutory language that gives the agency the explicit power to develop its "own method or methods" for calculating the costs, and explicitly allows the agency to limit the amount of reimbursement for "indirect costs," a category that includes the type of benefits payments being discussed here. 42 U.S.C. § 1395x(v)(1)(A). Thus, the statute clearly gives wide latitude to Defendant in determining the method or methods for calculating the reimbursement, and only requires that whatever method is used take into account indirect costs, which may be limited.

## C. Precedent Relied on by Plaintiffs

Plaintiffs do cite case law for its argument that I ought to interpret the statutory language to prevent the agency from using their particular method of calculating reimbursement amounts for indirect costs. Upon consideration, however, that case law has some fatal flaws. Wayne County depends heavily on a 1981 decision by the D.C. Circuit requiring Health and Human Services to use a method for calculating reimbursement that spread unem-

ployment benefits backward over period of time the employee worked. *Sisters of St. Francis Health Servs., Inc. v. Schweiker,* 514 F.Supp. 607, 614–15. The D.C. Circuit found that such a method, which is very similar to what Wayne County argues I should adopt, was not prevented by the statute, regulations, or manual at that time, and therefore the court could require an alternative method be used. *Id.* at 616–17. Here, given the changes in the statute, it is no longer clear that such a method would be permissible. Even if the law did allow this method, the manual now in place provides for the method used by the government. Moreover, the regulations no longer contain the key provision—one applying excess depreciation to prior cost years—that the D.C. Circuit relied on when ordering other prior cost year applications. *Id.* Finally, the D.C. Circuit issued its decision before the Supreme Court opinion in *Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc. et al.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), which generally restricts the ability of courts to overturn the reasonable decisions of agencies. Therefore, the reasoning of the D.C. Circuit would not be permitted today. Given the changes in the law between 1981 and now, I believe it would be an error to adopt the outcome of the D.C. Circuit decision when many factors leading to that opinion have changed.

Finally, Wayne County relies on a Supreme Court case regarding the refinancing of bonded debt, in which the Court upheld the decision of the federal government to apply the costs of those debts to the years of the original bond term to prevent "distortion" of the costs of a single year. *Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 98–99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995). That decision, however, was based on a named exception in the law for capital-related costs; there is no

analogous exception for employee-related costs. Without that exception, employee related costs must be handled under the prospective payment system, so the *Guernsey* decision does not apply here.

## CONCLUSION

Congress has given the agency the power to determine what method it will use in calculating the reimbursement amounts for indirect costs, and it does not appear that the agency's method violates current law. Precedent cited by Plaintiff either pre-dates the existing law or deals with items that come under named exceptions in the law. Since the parties have fully briefed the determinative issue and agree that no factual dispute exists, I DENY Plaintiffs' motion for summary judgment and GRANT summary judgment in favor of Defendant.

**IT IS SO ORDERED.**