**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4062
_____

GLORIA L. TROSTLE, individually and as Administratrix
of the ESTATE OF DAVID A. TROSTLE, deceased,

Appellant

v.

CENTERS FOR MEDICARE AND MEDICAID SERVICES

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 16-cv-00156)
District Judge:  Hon. William W. Caldwell
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 27, 2017
_____

Before:  MCKEE, VANASKIE, and RENDELL, *Circuit Judges*

(Filed October 5, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

The Estate of David Trostle and his widow, Gloria Trostle, appeal the District Court's dismissal of their action challenging the amount of the lien asserted by Appellee, Centers for Medicare and Medicaid Services ("CMS").[1] The lien was based upon expenditures made by Medicare in connection with Mr. Trostle's lengthy hospitalization resulting from the ingestion of the wrong medication sold to him by a pharmacy. The District Court dismissed the action for lack of subject matter jurisdiction because Trostle had failed to exhaust the requisite administrative procedures as a condition precedent to judicial review prescribed by the Medicare Act, 42 U.S.C. § 1395 *et seq.* Discerning no error in the District Court's well-reasoned conclusion that Appellants' claims arise under the Medicare Act such that the failure to exhaust the administrative review procedures foreclosed adjudication of Trostle's challenge to the CMS lien, we will affirm.

I.

In July of 2011 David Trostle was given the wrong prescription at his pharmacy. The prescription given to Trostle contained Lithium Carbonate, which caused Trostle to fall gravely ill with lithium toxicity poisoning. As a result of his illness he spent sixty-six days in the hospital at a cost of nearly $100,000.

In March 2013, Trostle brought a personal injury lawsuit against the pharmacy. Upon filing suit, Trostle reported the pending action to CMS, which had a lien against any potential recovery in the tort action by virtue of 42 U.S.C. § 1395y(b)(2)(B). CMS

---

[1] Appellants will be referred to collectively as Trostle. In addition, for sake of clarity, communications to or from the Appellants' counsel will be referred to as having been sent to or from Trostle.

2

initially asserted a lien in the amount of $725.17. This amount did not include any hospitalization charges. In a letter dated May 20, 2013, Medicare explained that "[i]f the underlying claim involves ingestion, exposure, implantation, or other non-trauma based injury, this . . . amount will need to be revised." (*Trostle v. Centers for Medicare & Medicaid Servs.*, No. 16-cv-00156, Doc. 11-1, (M.D. Pa. Oct. 17, 2016)). A year later, CMS informed Trostle that the lien had increased to $1,212.32, an amount that still did not include any hospitalization charges. In July of 2014, Trostle settled the tort claim against the pharmacy for $225,000. Trostle promptly notified CMS of the settlement, and CMS proceeded to calculate the total amount expended in connection with the lithium toxicity illness, including the hospital charges covered by Medicare. By letter dated August 14, 2014, CMS informed Trostle that the total amount exceeded $84,000. After reducing its claim by its share of attorney's fees attributable to the tort action, CMS demanded payment of $53,295.14.

By letter dated August 26, 2014, counsel for Trostle challenged the amount of the lien. Medicare treated the August 26th letter as a Request for Redetermination, the first step in the administrative review process.[2] In a decision dated October 15, 2014, the Request for Redetermination was denied. The decision informed Trostle that he could

---

[2] Under the Medicare Act, there are four steps in the administrative review process that follows an initial adverse determination. The first step is the Request for Redetermination by the original decision maker. If the Request for Redetermination is denied, an affected party may seek reconsideration by a Qualified Independent Contractor ("QIC"), and if unsuccessful, request a hearing by an Administrative Law Judge ("ALJ"). The final step in the process is a request for review of the ALJ's decision by the Medicare Appeals Council. *See* 42 U.S.C. § 1395ff(b); 42 C.F.R. §§ 405.940, 405.960, 405.1000, and 405.1100.

obtain an impartial review of Medicare's decision by a QIC, but had to do so within 180 days of the denial of the Request for Redetermination. Counsel for Mr. Trostle requested reconsideration through the appropriate QIC, Maximus Federal Services, but did not do so until June 22, 2015, well after the 180-day deadline. Because it was late, the reconsideration request was dismissed by Maximus. The Maximus dismissal letter, dated August 24, 2015, informed Trostle that he could seek reconsideration of the untimeliness ruling by submitting a request to Maximus within six months or could request review of Maximus' decision by an ALJ within sixty days of receipt of the Maximus letter. Neither step for additional administrative review was taken on behalf of Mr. Trostle. Instead, Trostle brought this action.

CMS moved for dismissal on several grounds, including sovereign immunity and lack of subject matter jurisdiction. The District Court dismissed the complaint for lack of subject matter jurisdiction based upon the failure to exhaust administrative remedies under the Medicare Act. This timely appeal followed.

## II.

This Court has jurisdiction to review the District Court's dismissal pursuant to 28 U.S.C. § 1291. We exercise plenary review of a decision dismissing an action for lack of subject matter jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).

## III.

The legislative provisions governing review of disputes arising under the Medicare Act incorporate by reference the review processes specified for social security and social

4

security disability insurance benefits.  *See* 42 U.S.C. § 1395ff(b)(1).  In particular, section 1395ff(b)(1)(A) provides for "judicial review of the Secretary's *final decision . . .* as is provided in section 405(g)" of title 42 U.S.C.  *Id.* (emphasis added.)  Significantly, "a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review."  *Heckler v. Ringer*, 466 U.S. 602, 606 (1984).  Furthermore, the Medicare Act expressly incorporates 42 U.S.C. § 405(h).  *See* 42 U.S.C. § 1395ii.  Section 405(h) makes judicial review under section 405(g) the exclusive avenue for a party to obtain federal court adjudication of a final decision involving a claim arising under the Medicare Act, *Heckler*, 466 U.S. at 614-15, and explicitly bars the use of federal question jurisdiction for such claims.  *See* 42 U.S.C. § 405(h) ("No action against the United States . . . or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under [the Medicare Act].").  As recognized in *Heckler*, "to be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act."  466 U.S. at 615.

What constitutes "arising under" the Medicare Act has been interpreted quite broadly.  The Supreme Court has declared that a claim is considered to arise under the Act if "both the standing and the substantive basis for the presentation" of the claim is the Act, or if the claim is "inextricably intertwined" with the Act.  *Id.* at 614-15 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1984)).

Trostle asserts that the claims in this action do not arise under the Medicare Act, but instead are based upon contract law.  In this regard, Trostle states that by failing to

5

notify Appellant that the lien amount had changed, CMS induced Trostle to rely upon the much lower number when negotiating a settlement, thereby estopping CMS from recouping its payments. While CMS had informed Trostle that it reserved the right to change the lien amount if the claim were based on an ingestion issue, Trostle argues that because CMS knew that the lithium toxicity was due to ingestion, it should have notified him of the substantial lien much sooner and before any settlement. Trostle alternatively argues that even if the claims presented in this case arise under the Medicare Act, a "final decision" has been rendered because there are no administrative review processes remaining available to him.

Trostle's arguments are without merit. First, this matter, involving as it does the question of the recovery of amounts paid by Medicare, plainly "arises under" the Medicare Act. Indeed, this legislation established the right of CMS to be subrogated to the tort recovery. *See* 42 U.S.C. § 1395y(b)(2)(B)(i)-(iv). Trostle acknowledges the subrogation interest of CMS created by the Medicare Act, but disputes the amount of that interest.

In *Fanning v. United States*, 346 F.3d 386, 402 (3d Cir. 2003), we held that a class of plaintiffs who sought to bar Medicare from recouping Medicare benefits from a tort action settlement fund presented claims that "arose under" the Medicare Act. We were therefore constrained to rule that "Section 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, precluded the district court from having federal question jurisdiction over" the action. *Id*. Similarly, the Federal Circuit held that a plaintiff cannot avoid the jurisdictional bar erected in Section 405(h) by

6

claiming that reimbursement of Medicare payments from a tort settlement was an "illegal

exaction." *See Wilson ex rel. Est. of Wilson v. United States*, 405 F.3d 1002, 1012 (Fed.

Cir. 2005). The court explained:

> [T]he [Medicare] Act provides both the "standing and substantive basis" for [plaintiff's] claim. At the same time, we think it can fairly be said that [plaintiff's] illegal exaction claim is "inextricably intertwined" with both the claim of HHS relating to the Medicare benefits that were paid . . . and [the] challenge to HHS's claim. Thus, if [plaintiff] was dissatisfied with HHS's determination that the receipt of proceeds from the malpractice settlement constituted an overpayment, she had available to her the administrative review process provided by the Medicare Act.

*Id. Accord, Buckner v. Heckler*, 804 F.2d 258, 259 (4th Cir. 1986) (finding that whether

a plaintiff is required to reimburse Medicare is a question arising under the Medicare

Act).

Likewise here, the Medicare Act is "inextricably intertwined" with CMS's

reimbursement claim and Trostle's challenge. As the District Court aptly reasoned:

> Plaintiffs' assertions, though styled as state law equitable claims, essentially argue that CMS's procedures and practices regarding its conditional payment letters and website portal management were deficient and unfair. Because such procedures and practices are part of the Medicare Act itself, however, Plaintiffs' claims necessarily arise under the Act.

*Trostle v. Centers for Medicare and Medicaid Servs.*, No. 16-cv-00156, 2016 WL

6082131, at *4 (M.D. Pa. Oct. 17, 2016). Trostle had available to him the administrative

review process to challenge the actions of CMS, but chose not to pursue those remedies.

That he is now foreclosed from obtaining judicial review is attributable solely to the

7

failure to exhaust the review process and obtain a final decision from the Medicare Appeals Council.

IV.

Thus, because the claim arises under the Medicare Act and because Trostle failed to exhaust the available administrative review processes, thereby preventing entry of a judicially-reviewable final decision, the District Court lacked subject matter jurisdiction. Accordingly, we will affirm the District Court's dismissal of this action for lack of subject matter jurisdiction.