# United States Court of Appeals for the Federal Circuit

04-1389

TELECARE CORP.,

Plaintiff-Appellant,

v.

MIKE LEAVITT, Secretary of Health and Human Services,
DEPARTMENT OF HEALTH AND HUMAN SERVICES, and
CENTER FOR MEDICARE AND MEDICAID SERVICES,

Defendants-Appellees.

Jeffrey L. Fisher, Davis Wright Tremaine LLP, of Seattle, Washington, argued for plaintiff-appellant. On the brief were James P. Walsh, of San Francisco, California, and D. Bruce Lamka, of Seattle, Washington. Of counsel was Peter L. Isola, of San Francisco, California.

Alisa B. Klein, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With her on the brief were Peter D. Keisler, Assistant Attorney General, Kevin V. Ryan, United States Attorney, of San Francisco, California, and Mark B. Stern, Attorney. Of counsel on the brief were Alex Azar, II, General Counsel, Robert P. Jaye, Acting Associate General Counsel, Carol Bennett, Deputy Associate General Counsel for Program Integrity, and Howard S. Cohen, Attorney, United States Department of Health and Human Services, of Washington, DC.

Appealed from: United States District Court for the Northern District of California

Judge Saundra Brown Armstrong

# United States Court of Appeals for the Federal Circuit

04-1389

TELECARE CORP.,

Plaintiff-Appellant,

v.

MIKE LEAVITT, Secretary of Health and Human
Services, DEPARTMENT OF HEALTH AND HUMAN
SERVICES, and CENTER FOR MEDICARE
AND MEDICAID SERVICES,

Defendants-Appellees.

_____

DECIDED: May 25, 2005

_____

Before CLEVENGER, RADER, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

This case involves a dispute between Telecare Corp. ("Telecare") and the government as to Telecare's liability under the Medicare Secondary Payer statute, Social Security Act § 1862, codified at 42 U.S.C. § 1395y. The United States District Court for the Northern District of California held that Telecare was liable as a secondary payer. We affirm.

## BACKGROUND

### I

The defendants in this case administer the Medicare program. Medicare provides health insurance to the elderly, the disabled, and other eligible beneficiaries.

Medicare was enacted in 1965 as Title 18 of the Social Security Act, commonly known as the Medicare Act. See Health Insurance for the Aged Act, Pub. L. No. 89-97, 79 Stat. 286 (1965).

Beginning in 1980, Congress provided that where beneficiaries are covered for medical expenses by both a group health plan and Medicare, Medicare would be a "secondary payer" of those medical expenses. This provision is known as the Medicare Secondary Payer ("MSP") statute and is found at section 1862 of the Social Security Act, codified as 42 U.S.C. § 1395y. "When the MSP statute applies, a private group health plan must pay for an expense first. Thus, it is the 'primary payer.' Medicare pays for any remaining amount of the expense not satisfied by the group health plan. Consequently, it is the 'secondary payer.'" N.Y. Life Ins. Co. v. United States, 190 F.3d 1372, 1374 (Fed. Cir. 1999).

Although a private group health plan is obligated to make payment when primarily liable, and Medicare is to avoid payment in such circumstances, Medicare nonetheless sometimes makes payments in error. See United States v. Baxter Int'l, Inc., 345 F.3d 866, 901 & n.30 (11th Cir. 2003). The government has the right to reimbursement in such circumstances, and that reimbursement right is not limited to the beneficiary, the health care provider, or the group health plan. Under the statute, as amended in 2003, the government may recoup the payment from

> any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. . . .

Social Security Act § 1862(b)(2)(B)(iii), codified at 42 U.S.C.A. § 1395y(b)(2)(B)(iii) (Supp. 2004) (emphasis added).

The issue in this appeal is whether the statute authorizes recovery against an employer that "sponsors or contributes to" a group health plan.

II

Telecare is a company that provides services to those suffering from mental illness. The issue concerns Telecare's liability for Medicare payments made to Telecare's employees (and their dependents). Telecare makes available to its employees a prepaid health care plan from Kaiser Foundation Health Plan and pays a premium to Kaiser, thereby sponsoring and contributing to the group health plan. Under the arrangement between Kaiser and Telecare, Kaiser is obligated to provide a defined list of health care items and services for Telecare employees and their dependents. Telecare is not itself contractually obligated to pay health care providers for these medical services.

Some of Telecare's employees and their dependents are also covered by Medicare. One such individual incurred medical expenses, for which Medicare initially paid. Invoking the MSP statute, Medicare then demanded that Telecare reimburse it, allegedly without seeking payment from the group health plan (Kaiser). Telecare eventually paid Medicare the sum of $1470.96 under protest. Telecare then filed this action in the United States District Court for the Northern District of California, seeking recovery of the amount paid to Medicare under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and declaratory and injunctive relief against further reimbursement

demands under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Telecare also sought class certification with respect to the APA claim.

The district court dismissed the complaint. The district court held that there was jurisdiction over Telecare's claim for $1470.96 under the Little Tucker Act but dismissed the suit for failure to state a claim, because the MSP statute, as amended in 2003, gave Medicare the right to seek reimbursement from Telecare. Telecare Corp. v. Thompson, No. 03-CV-3797, slip op. at 2-3, 6-7 (N.D. Cal. 2004). The district court concluded that "[a]n employer that sponsors or contributes to a group health plan . . . falls squarely into the language of the statute." Id. at 6. The district court dismissed the APA claim for lack of jurisdiction because there was no APA waiver of sovereign immunity where an adequate remedy existed under the Tucker Act or Little Tucker Act to recover the amounts illegally extracted by the government.[1] Id. at 2-3. The district court did not rule on Telecare's motion for class certification. Telecare appeals.[2]

## DISCUSSION

### I

We must first consider whether the district court had jurisdiction over the claim for $1470.96 under the Little Tucker Act. Although the government concedes jurisdiction under the Little Tucker Act, every "appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." Mitchell v. Maurer, 293 U.S. 237, 244 (1934).

---

[1] The district court also held that the APA claim was not ripe for adjudication. Id. at 3-5.

[2] While Telecare moved for class certification, no class was certified. Accordingly, only Telecare is before this court on appeal.

"The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996). Because the amount claimed is less than $10,000, the Little Tucker Act on its face grants the district court jurisdiction to determine whether Telecare was entitled to the return of $1470.96. See 28 U.S.C. § 1346(a)(2) (2000).

However, as we recently held in Wilson v. United States, No. 04-5051 (Fed. Cir. Apr. 21, 2005), Tucker Act jurisdiction is limited in Medicare cases by sections 205 and 1872 of the Social Security Act. Specifically, § 205(h), as modified by § 1872, provides:

> The findings and decisions of the [Secretary of Health and Human Services] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. <u>No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28, United States Code [the Little Tucker Act] to recover on any claim arising under [the Medicare Act].</u>

Social Security Act § 205(h), codified at 42 U.S.C. § 405(h) (2000).

Section 205(h) thus bars Little Tucker Act jurisdiction and federal question jurisdiction for a claim "arising under" the Medicare Act. We have read section 205(h) to bar Tucker Act jurisdiction as well for "arising under" claims brought under the Tucker Act itself. Wilson, slip op. at 11. The question is the meaning of the "arising under" language of § 205(h). In Wilson, we held that a claim "arises under" the Medicare Act if the claim is subject to the specialized review process of sections 205(g) and 1869 of the Social Security Act (codified at 42 U.S.C. §§ 405(g) and 1395ff). Wilson, slip op. at 11 n.9. Section 1869(a)(1) provides, inter alia, for an initial determination by the Secretary of "whether an individual is entitled to benefits." Section 1869(b)(1)(A) provides:

04-1389                                    5

> [A]ny individual dissatisfied with any initial determination under subsection (a)(1) shall be entitled to reconsideration of the determination, and . . . a hearing thereon by the Secretary . . . and . . . to judicial review of the Secretary's final decision after such hearing as is provided in section 205(g).

Social Security Act § 1869(b)(1)(A), codified at 42 U.S.C.A. § 1395ff(b)(1)(A) (Supp. 2004).

In <u>Wilson</u> we held that the plaintiff was asserting a claim of entitlement to benefits and thus the claim "arose under" the Medicare Act. In that case, Medicare determined that it overpaid benefits to Wilson, and Medicare sought to recover that overpayment from him. Wilson paid Medicare but then sued to get the money back. We held that such a suit was "essentially a claim contesting the agency's initial determination that it overpaid benefits to [ ] Wilson, and [was] thus a claim for benefits." <u>Wilson</u>, slip op. at 17. Because the specialized administrative and judicial review process of sections 1869 and 205(g) applied to claims for benefits, Tucker Act jurisdiction was barred by section 205(h). The same would, of course, apply to a suit under the Little Tucker Act, which is expressly barred when a suit "arises under" the Medicare Act.

However, we also noted in <u>Wilson</u> that "[w]e do not suggest that the application of [section 205(h)] precludes judicial review through other avenues in cases where the specialized administrative and judicial review processes provided in the statute are not available." <u>Id.</u>, slip op. at 11 n.9. In this case, Medicare did not assert that it overpaid benefits to Telecare, but rather to Telecare's employee. Telecare is not asserting, and cannot assert, any claim of entitlement to Medicare benefits, or any other claim under

section 1869(a)(1). The specialized review process is thus not available.[3] Because Telecare cannot invoke the specialized administrative and judicial review process of sections 1869 and 205(g), section 205(h) does not apply. Indeed, the government here concedes that Telecare's money claim is "properly presented under the Little Tucker Act." (Br. of Appellee at 31.) Therefore, the district court properly had jurisdiction under the Little Tucker Act to adjudicate Telecare's claim for $1470.96.

II

In addition to the Little Tucker Act, Telecare also seeks declaratory and injunctive relief to bar further demands for payment under the APA. The APA contains a waiver of sovereign immunity for suits to "set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706 (2000). But the APA waives sovereign immunity only if there is "no other adequate remedy." 5 U.S.C. § 704 (2000).

The availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an "adequate remedy" for § 704 purposes. Christopher Vill., L.P. v. United States, 360 F.3d 1319, 1327-29 (Fed. Cir. 2004); Consol. Edison Co. of N.Y. v. United States, 247 F.3d 1378, 1382-84 (Fed. Cir. 2001); see Martinez v. United States, 333 F.3d 1295, 1320 (Fed. Cir. 2003) (en banc). Because Telecare can bring an action under the Tucker Act or Little Tucker Act to redress the allegedly improper exaction, there is no waiver of sovereign immunity under the APA. Telecare contends that the remedy is not adequate because it could recover the amounts illegally

---

[3] Telecare could have challenged the asserted indebtedness through administrative procedures under the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3711, but not under the Medicare administrative process.

demanded by Medicare only by repeatedly bringing suit, but a final decision in a Little Tucker Act case either by this court or the Supreme Court will finally resolve the issue and as a practical matter make repeated suits unnecessary. See Consol. Edison, 247 F.3d at 1384. The district court correctly dismissed Telecare's APA claim for declaratory and injunctive relief for lack of jurisdiction.[4]

### III

We proceed to the merits of Telecare's Little Tucker Act claim. On the merits of Telecare's Little Tucker Act claim for $1470.96, this case requires us to interpret the MSP statute. Originally, Medicare "paid for services without regard to whether they were also covered by an employer group health plan." N.Y. Life, 190 F.3d at 1373. As noted earlier, the MSP statute was first enacted in 1980 to make Medicare secondarily liable to liability insurance plans and workmen's compensation plans. Medicare and Medicaid Amendments of 1980, Pub. L. No. 96-499, sec. 953, § 1862, 94 Stat. 2599, 2647. Its provisions were extended to make Medicare secondarily liable to group health plans in 1981. Medicare and Medicaid Amendments of 1981, Pub. L. No. 97-35, sec. 2146(a), § 1862, 95 Stat. 357, 800-01. Medicare was not obligated to pay for certain medical services if payments had been made or would be made "promptly" by a group health plan.[5]

---

[4] Telecare also asserted a claim to the $ 1470.96 under the APA. Such a claim is also clearly barred as a suit under the Little Tucker Act is an adequate remedy.
[5] The 1981 statute provided:

[P]ayment under this title may not be made, except as provided in subparagraph (B), with respect to any item or service . . . to the extent that payment with respect to expenses for such item or service (i) has been made under any group health plan . . . or (ii) the Secretary determines will

Section 1862(b)(2)(B) of the 1981 statute then provided, in pertinent part:

> Any payment under this title with respect to any item or service . . . shall be conditioned on reimbursement to the appropriate Trust Fund . . . when notice or other information is received that payment . . . has been made under a plan.

Thus Medicare was entitled to reimbursement by the beneficiary or the health care provider who had received "payment" from Medicare, but there appeared to be no provision for the Secretary to seek payment from the group health plan. <u>See</u> H.R. Rep. No. 98-432, at 1803 (1984).

In 1984, the statute was amended to authorize actions by the United States to recover payments from entities "responsible" for payment. Medicare and Medicaid Budget Reconciliation Amendments of 1984, Pub. L. No. 98-369, sec. 2344(c), § 1862(b)(3), 98 Stat. 494, 1095-96. The 1984 statute provided, in pertinent part:

> In order to recover payment made under this title for an item or service, the United States may bring an action against any entity which would be responsible for payment with respect to such item or service (or any portion thereof) under such a plan.

Social Security Act, § 1862(b)(3)(A), codified at 42 U.S.C. § 1395y(b)(3)(A) (1982 & Supp. II 1984). The language of the statute clearly allowed the United States to recover payments from the group health plan.

In the late 1980s, Medicare asserted that it could also seek recovery from third-party administrators ("TPAs") of group health plans as well as the entity that bore the ultimate financial burden of the plan. The litigation culminated in the District of

---

> be made under such a plan as promptly as would otherwise be the case if payment were made by the Secretary under this title.

Social Security Act § 1862(b)(2)(A), codified at 42 U.S.C. § 1395y(b)(2)(A) (1976 & Supp. V 1981).

Columbia Circuit's decision in <u>Health Insurance Association of America, Inc. v. Shalala</u>, 23 F.3d 412, 417 (D.C. Cir. 1994) ("HIAA"), holding that the then-existing statute did not provide for recovery against TPAs.

Congress amended the statute in 1997 to allow Medicare to recover against TPAs and others "required or responsible . . . to make payment." Balanced Budget Act of 1997, Pub. L. No. 105-33, sec. 4633(a), § 1862, 111 Stat. 251, 487. The statute, in pertinent part, was amended to read:

> In order to recover payment made under this title for such an item or service, the United States may bring an action against any entity which is required or responsible <u>(directly, as a third-party administrator, or otherwise) to make payment</u> with respect to such item or service (or any portion thereof) under a primary plan.

Social Security Act § 1862(b)(2)(B)(ii), codified at 42 U.S.C. § 1395y(b)(2)(B)(ii) (2000) (prior to 2003 amendment) (1997 amendment emphasized). The legislative history makes clear that this amendment was in response to the <u>HIAA</u> decision. The House Report stated: "A 1994 appeals court decision held that [Medicare] could not recover from third party administrators of self-insured plans. . . . The provision would permit recovery from third party administrators of primary plans." H.R. Rep. No. 105-149, at 739 (1997).

Beginning in 2000, Medicare asserted that it could seek recovery from employers who sponsored or contributed to third-party health insurance for their employees, relying on the "or otherwise" language of the 1997 amendment. Telecare and other employers disputed this interpretation, leading to the filing of the present suit in August 2003. While the suit was pending, in December 2003, Congress again amended the MSP statute. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub

L. No. 108-173, sec. 301(b)(3), § 1862(b)(2)(B), 117 Stat. 2066, 2222. The amendments were made effective retroactively to 1980.[6]  Id. sec. 301(d)(2).  The amended statute provides:

> (iii) Action by United States. In order to recover payment made under this title for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.

Social Security Act § 1862(b)(2)(B)(iii), codified at 42 U.S.C.A. § 1395y(b)(2)(B)(iii) (Supp. 2004).  The changes in language from the 2003 amendments are emphasized.

The parties discuss at some length the various regulations under the statute, the appropriate construction of those regulations, and the question of deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). We need not address those questions because we conclude that the statute's plain language compels a finding that all employers who sponsor or contribute to a group health plan are liable.

Telecare first argues that the term "employer" should be limited to self-insured employers.  We see no basis for limiting the term "employer" in this way, and Congress specifically and separately provided for recovery from self-insurers in the same statutory

---

[6]     Telecare does not argue that the amendments cannot be retroactively applied.

provision.[7]  Telecare concedes that it "makes available to its employees a prepaid health care plan from Kaiser [and] . . . pays a premium to Kaiser."  (Br. of Appellant at 3.)  Telecare is thus clearly "an employer that sponsors or contributes to a group health plan."  It argues, however, that this does not create liability because it is not "required or responsible . . . to make payment . . . under a primary plan."  In essence, Telecare argues that there is a conflict between the "employer" language inside the parenthetical and the "required or responsible" language outside the parenthetical, and it urges us to disregard the "employer" language within the parenthetical, following the Supreme Court's decision in Chickasaw Nation v. United States, 534 U.S. 84 (2001).  However, Chickasaw does not support Telecare's proposed interpretation of the statute.

Chickasaw involved the interpretation of 25 U.S.C. § 2719, which provided: "The provisions of [the Internal Revenue Code of 1986] (including sections 1441, 3402(q), 6041, and 6050I, and chapter 35 of such [Code]) concerning the reporting and withholding of taxes . . .  shall apply to Indian gaming operations . . . in the same manner as such provisions apply to State gaming and wagering operations."  The problem was that Chapter 35 was not a reporting or withholding provision, but rather imposed taxes.  The petitioners in Chickasaw, Indian tribes who had gaming operations, argued that under section 2719 they were exempt from Chapter 35 taxes because the states were exempted.  The Supreme Court rejected the argument for exemption.  It

---

[7]  In urging that its proposed construction would not render the term "self-insurer" superfluous, Telecare argues that the term "self-insurer" in § 1862 encompasses only self-insured entities engaged in a business, trade or profession, and that inclusion of the term "employer" was necessary to cover self-insured governmental and charitable employers.  This argument has no support in the language of the statute, and is without merit.

04-1389                                     12

found an irreconcilable conflict between the language inside and outside the parenthetical, and concluded that the language outside the parenthetical governed. The Court concluded that it could "find no other reasonable reading of the statute," except to reduce the reference to Chapter 35 in the parenthetical to "surplusage." 534 U.S. at 89. The Court noted that "the language outside the parenthetical is unambiguous." Id. It would not have been possible to regard the parenthetical in § 2719 as defining "reporting" or "withholding" to include the provisions of Chapter 35 because the two terms are used repeatedly and have well-established meanings in the Internal Revenue Code. See, e.g., I.R.C. § 3402 (2000) (prescribing the withholding of income tax from wages); I.R.C. § 6053 (2000) (prescribing reporting requirements for tips). The Court concluded that "the more plausible role for the parenthetical to play in [25 U.S.C. § 2719] is that of providing an illustrative list of examples . . . , in context, common sense suggests that the cross-reference [to Chapter 35] is simply a drafting mistake, a failure to delete an inappropriate cross-reference in the bill that Congress later enacted into law." Chickasaw, 534 U.S. at 90-91.

Telecare's reliance on Chickasaw is misplaced. As we now discuss, there is no irreconcilable inconsistency between the language inside and outside the parenthetical in the MSP statute. There is thus nothing in the MSP statute itself or the legislative history to indicate that Congress made a drafting mistake.

Telecare's attempt to find a conflict between the words inside and outside the parenthetical in § 1862 rests with the contention that "responsible" means "legal[ly] obligat[ed]." (Reply Br. of Appellant at 7.) We reject this reading for several reasons.

First, since Congress used the term "required" as well as "responsible", it seems unlikely that Congress intended to give "responsible" the same meaning as "required." Telecare cites Neal v. Clark, 95 U.S. 704, 708-09 (1877), for the canon that: "[T]he coupling of words together shows that they are to be understood in the same sense." That is true but irrelevant, for "same sense" does not mean "identical." Neal construed the word "fraud" in the bankruptcy statute in light of the adjoining word "embezzlement," and held that fraud required moral turpitude or intentional wrongdoing since those were required for embezzlement. Id. at 709. Neal did not give "fraud" and "embezzlement" identical meanings. Telecare's proposed interpretation, that "required" and "responsible" mean the same thing, instead violates the canon that courts should be "reluctant to treat statutory terms as surplusage in any setting." Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal quotations omitted).

Second, the Supreme Court has held that the plain meaning of a statute is to be ascertained using standard dictionaries in effect at the time of the statute's enactment. Lamar v. United States, 241 U.S. 103, 113 (1916). The dictionary offers various definitions of "responsible" including "liable or subject to legal review or in case of fault to penalties," and "involving a degree of accountability." Webster's Third New International Dictionary of the English Language 1935 (3d ed. 1961). Although the first definition supports Telecare's position that "responsible" means "legally obligated," the other definition supports a concept of indirect responsibility. The statute itself contemplates that some entities are "directly" liable, i.e. legally obligated, thus suggesting that the other covered entities are only indirectly responsible. By distinguishing between "directly" responsible entities and other entities the parenthetical

indicates that an employer's responsibility may be either direct or indirect. Thus we think that the word "responsible" means "involving a degree of accountability," a definition that easily encompasses employers who sponsor or contribute to a group health plan.

Even if the ordinary meaning of "responsible" were limited to "legally obligated," the same result would obtain. Statutes frequently define words in a manner that diverges from ordinary meaning. And this can be done through a parenthetical as well as a specific definitional provision, as the Supreme Court's decision in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 469-70 (1933) makes clear. In Pinellas Ice, the Supreme Court interpreted "reorganization" under section 203 of the Revenue Act of 1926. The relevant section stated: "[t]he term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation) . . . ." Revenue Act of 1926, ch. 27, § 203(h)(1), 44 Stat. Pt. 2, 9, 14. The Fifth Circuit had held that, despite the language of the parenthetical, "merger or consolidation" should be limited to its ordinary meaning, which was "an acquisition of substantially all the property of another corporation." Pinellas Ice & Cold Storage Co. v. Commissioner, 57 F.2d 188, 190 (5th Cir. 1932). The Supreme Court rejected this interpretation, holding that:

> The words within the parenthesis may not be disregarded. They expand the meaning of "merger" or "consolidation" so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words — so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation.

<u>Pinellas Ice</u>, 287 U.S. at 469-70 (emphasis added).

Telecare attempts to distinguish <u>Pinellas Ice</u> by arguing that where the parenthetical comes at the end of the statutory language, the parenthetical is defining; but because the parenthetical in § 1862 comes in the middle of the statutory language, it is not defining. We do not think that appellant has articulated a meaningful distinction between the two situations. <u>Pinellas Ice</u> holds that parentheticals may define terms beyond their "ordinary and commonly accepted meaning," <u>id.</u>, so long as the statute itself permits such a definition.[8] Here, even if Telecare's view as to the ordinary meaning of "responsible" were to be accepted, the parenthetical defines the word to have a broader meaning in this particular statute.

IV

Telecare finally argues that imposing liability on it would be contrary to the policy and purpose of the MSP statute. Telecare notes that the MSP statute unquestionably allows Medicare to seek reimbursement from Kaiser, and argues that an additional

---

[8] As noted above, in <u>Chickasaw</u>, the language of the statute did not permit such a construction. As the Supreme Court stated:

> The language of the statute is too strong to bend as the Tribes would wish — i.e., so that it gives the chapter 35 reference independent operative effect. For one thing, the language outside the parenthetical is unambiguous. It says without qualification that the subsection applies to "provisions . . . concerning the reporting and withholding of taxes." And the language inside the parenthetical, prefaced with the word "including," literally says the same. To "include" is to "contain" or "comprise as part of a whole." Webster's Ninth New Collegiate Dictionary 609 (1985). In this instance that which "contains" the parenthetical references — the "whole" of which the references are "parts" — is the phrase "provisions . . . concerning the reporting and withholding of taxes . . . ."

<u>Chickasaw</u>, 534 U.S. at 89.

04-1389                                16

remedy against Telecare is unnecessary. It also urges that allowing recovery against an employer is unfair. Telecare points out that under its contract with Kaiser, it has only one year to seek reimbursement from Kaiser, whereas the United States has three years to bring an action under the MSP statute. Social Security Act § 1862(b)(2)(B)(vi), codified at 42 U.S.C.A. § 1395y(b)(2)(B)(vi) (Supp. 2004). Therefore, it is possible that Telecare will be liable under the MSP statute even when it cannot seek reimbursement from Kaiser. Telecare argues Congress cannot have intended an employer who is not otherwise liable for medical expenses to actually end up paying for such expenses through reimbursing Medicare, without further recourse from an insurer. In support of this argument, Telecare notes that the same parenthetical in section 1862 that imposes liability on employers also imposes liability on TPAs, but recovery against TPAs is precluded in certain circumstances when the TPA would not be able to seek further reimbursement from "the employer or group health plan."[9] Telecare argues that Congress would not have intended to treat employers differently from TPAs, and had Congress really intended to impose liability on employers, it would have included a

---

[9] The provision states:

The United States may not recover from a third-party administrator under this clause in cases <u>where the third-party administrator would not be able to recover the amount at issue from the employer or group health plan</u> and is not employed by or under contract with the employer or group health plan at the time the action for recovery is initiated by the United States or for whom it provides administrative services due to the insolvency or bankruptcy of the employer or plan.

Social Security Act § 1862(b)(2)(B)(iii), codified at 42 U.S.C.A. § 1395y(b)(2)(B)(iii) (Supp. 2004) (emphasis added).

similar exemption from liability in cases where later recovery by the employer from the group health plan was unavailable.

There are several responses to Telecare's policy argument. First and foremost, the plain language of the statute leads to a contrary result. Second, Congress plainly regarded TPAs as appropriately falling into a different category than employers since TPAs were exempt only if they could not recover from either the group health plan <u>or the employer</u>. Third, it is up to Congress, and not this court, to decide whether the statute is fair to employers as compared to TPAs or insurers. <u>See</u> <u>United States v. Noland</u>, 517 U.S. 535, 541 n.3 (1996) ("Noland may or may not have a valid policy argument, but it is up to Congress, not this Court, to revise the [statute] if it so chooses."); <u>cf.</u> <u>HIAA</u>, 23 F.3d at 416-17. Finally, Telecare's concern that it will end up without reimbursement from Kaiser after paying Medicare can be remedied if Telecare enters into agreements with insurance providers that allow recourse for the same period as the government has recourse against Telecare as an employer.

V

Therefore, we hold that the statute allows the United States to initiate an action against any employer that "sponsors or contributes to a group health plan," where the group health plan "make[s] payment with respect to the same item or service (or any portion thereof) under a primary plan." Such a construction gives reasonable meaning and effect to all the words in the statute, and is to be preferred over Telecare's proposed interpretation, which would render parts of the statute inoperative. Telecare sponsors and contributes to the group health plan, and under the plain language of the statute it cannot prevail.

CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

COSTS

No costs.