# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-3814

PATRICIA A. MARTIN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 13, 2013                    Decided February 28, 2014)

*Andrew M. Bernie* and *Martin V. Totaro*, of Washington, D.C., for the appellant.

*Thomas E. Sullivan*, with whom *Will A. Gunn*, General Counsel; *David L. Quinn*, Acting Assistant General Counsel; and *Gayle E. Strommen*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, SCHOELEN, and BARTLEY, *Judges*.

SCHOELEN, *Judge*: The appellant, Patricia A. Martin, the widow of veteran John Martin, appeals, through counsel, an October 20, 2011, Board of Veterans' Appeals (Board) decision that denied entitlement to Supplemental Service Disabled Veterans' Insurance (Supplemental S-DVI) under 38 U.S.C. § 1922A. *See* Record (R.) at 3-11.

This panel was convened to decide an issue of first impression before this Court. Specifically, whether the beneficiary of a deceased veteran can be eligible for supplemental life insurance under 38 U.S.C. § 1922A when the veteran did not file for S-DVI under 38 U.S.C. § 1922 during his lifetime. The Court holds that in accordance with the plain language of the statute, the grant of insurance under 38 U.S.C. § 1922(b) is treated, by operation of law, as an award under 38 U.S.C. § 1922(a). However, the appellant is not entitled to an award of Supplemental S-DVI

under 38 U.S.C. § 1922A because the veteran did not qualify for a waiver of premiums under 38 U.S.C. § 1912.[1]

# I. BACKGROUND

The veteran, John E. Martin, served in the U.S. Marine Corps from August 1968 to August 1970 and from February 1985 to December 1986. R. at 537-38.

In August 2005, the veteran was seen for an annual physical examination. R. at 184-89. The examiner noted that the veteran had lost 30 pounds, had jaundice, and that diabetes was developing. *Id.* A computed tomography scan revealed a mass in the veteran's pancreas. R. at 185-86. After the veteran underwent exploratory surgery, his doctors determined that he had inoperable pancreatic cancer. *Id.*

Later in August 2005, the veteran applied for disability compensation for diabetes associated with herbicide exposure, entitlement to non-service-connected pension, entitlement to special monthly pension based on the need for aid and attendance, disability compensation for pancreatic cancer, and disability compensation for multiple sclerosis. R. at 153. A January 2006 VA compensation and pension examiner opined that the veteran's diabetes was "as likely as not" the result of herbicide exposure "on the basis of presumption." R. at 162. On December 31, 2005, the veteran entered hospice. R. at 99.

On February 10, 2006, the regional office (RO) granted the veteran disability compensation for diabetes associated with herbicide exposure with a 20% disability rating. R. at 153-58. The veteran was also granted a non-service-connected pension and a special monthly pension based on the need for aid and attendance. *Id.* However, the RO denied disability compensation for the veteran's pancreatic cancer. *Id.*

On February 15, 2006, the veteran's physician, Dr. Robert Wadleigh, explained in a letter to the RO that the veteran's diabetes was directly related to his pancreatic cancer because "his pancreas had to work harder to produce insulin[,] which caused a direct link to the unresectable pancreatic

---

[1] "Waiver of premiums" or "total disability waiver" refers to a veteran's ability to have premium payments for S-DVI waived while he or she is continuously totally disabled. 38 U.S.C. § 1912.

cancer." R. at 54. The next day, based on the letter from Dr. Wadleigh, the RO granted the veteran 100% disability compensation for his pancreatic cancer as secondary to his service-connected diabetes. R. at 129-33. The RO mailed the letter informing the veteran of its decision, five days later, on February 21, 2006. R. at 125.

On February 22, 2006, the veteran died from his pancreatic cancer. R. at 53. According to the appellant, she did not receive the rating decision in the mail until "four or five days" after the veteran's death. R. at 19. A triage nurse at the veteran's hospice later explained that the veteran was "unable to conduct his daily affairs in the last few days of his life due to high doses of medication." R. at 96.

During his lifetime, the veteran did not apply for S-DVI. R. at 315. On February 27, 2006, the appellant submitted an application seeking both S-DVI and Supplemental S-DVI on behalf of her husband. R. at 51-52, 104-05. In March 2006, the RO sent the appellant a letter explaining that they were unable to accept her application for S-DVI because it had to be "signed by the veteran and received by the VA Insurance Service before the veteran's death." R. at 315. In April 2006, the RO determined that the veteran's cause of death was service connected. R. at 112-15. On June 30, 2006, the RO awarded the appellant gratuitous S-DVI under 38 U.S.C. § 1922(b).[2] R. at 92-95. In its decision, the RO found that the veteran had been mentally incompetent at death as a result of his service-connected disability and that this prevented him from applying for S-DVI. *Id.*

After receiving the June 2006 decision, the appellant contacted VA on multiple occasions to express her belief that she was also entitled to Supplemental S-DVI. R. at 84, 304. VA acknowledged the appellant's disagreement; however, it confirmed its decision to deny Supplemental S-DVI because the veteran had never applied for S-DVI during his lifetime. R. at 40-42, 46-47, 302-03.

In January 2011, the appellant testified before the Board that she believed she should be entitled to supplemental life insurance because the veteran was 100% disabled when he died. R. at

---

[2] "Gratuitous S-DVI" is a term used by VA to reference insurance awarded to veterans' beneficiaries in the event that the veteran is unable to apply for S-DVI as a result of mental incapacity. 38 U.S.C. § 1922(a).

22. Her representative argued that VA failed to follow the language of the statute by failing to determine whether the veteran was entitled to a waiver of premiums under section 1912. R. at 27-31.

On October 20, 2011, the Board issued the decision here on appeal. R. at 3-11. The Board found that the RO granted the appellant a gratuitous S-DVI payment under 38 U.S.C. § 1922(b), but that she was not entitled to a Supplemental S-DVI payment because

> the [v]eteran never had a[n] [] insurance policy in effect under 38 U.S.C.A. § 1922(a). As is noted above, the [v]eteran must have had a[n] [] insurance policy in effect under 38 U.S.C.A. § 1922(a) for an award of [supplemental] insurance [to] be granted. 38 U.S.C.A. § 1922A(a). The Board further points out that, as a[n] [insurance] policy was not in effect at the time of the [v]eteran's death, the criteria for a waiver of premiums could not possibly have been met under 38 U.S.C.A. § 1912. *Id.* Accordingly, the Board finds the criteria for eligibility for [supplemental] insurance have not been met, and that the claim must be denied. *Id.*

R. at 7.

The Board explained that an award of gratuitous insurance under 38 U.S.C. § 1922(b) did not satisfy the criteria that insurance be in effect under 38 U.S.C. § 1922A. Then, the Board stated that there may be "some confusion in this case" because of the language in section 1922(b) that "a person otherwise qualified for [life] insurance who did not apply for such insurance will be deemed to have applied for and been granted such insurance." R. at 8. The Board concluded that even though the notification of the veteran's right to apply for life insurance was not received until after his death, according to the statutes VA was unable to award Supplemental S-DVI. R. at 10.

## II. ANALYSIS

The primary issue in this case is the proper interpretation of interlocking statutory provisions that govern the award of S-DVI and supplemental S-DVI for totally disabled veterans. S-DVI is a life insurance benefit for veterans who have service-connected disabilities, but who are otherwise in good health.[3] Under section 1922(a), S-DVI is provided to veterans "suffering from a disability or disabilities for which compensation would be payable if 10 per centum or more in degree" upon "application in writing made within two years from the date service-connection of such disability is determined by the Secretary and payment of premiums as provided in this subchapter." Section

---

[3] *See* http://benefits.va.gov/insurance/s-dvi.asp (last visited Feb. 11, 2014).

1922(b) provides that "[a]ny person who . . . was otherwise qualified for insurance under . . . subsection (a) of this section," but who is found to have been mentally incompetent from a service-connected disability at the time of his or her death, "shall be deemed to have applied for and to have been granted such insurance, as of the date of death."

A veteran who is insured under S-DVI and has been granted a waiver of premiums for being totally disabled is eligible for supplemental insurance. *See* 38 U.S.C. § 1922A. Supplemental S-DVI for totally disabled veterans is governed by 38 U.S.C. § 1922A, which states that Supplemental S-DVI "shall be granted upon the same terms and conditions as insurance granted under section 1922(a) of this title," provided "the application is made for such insurance before the person attains 65 years of age." 38 U.S.C. § 1922A(c). Further, section 1922A also states that "supplemental insurance in an amount not to exceed $30,000" is available for "[a]ny person insured under section 1922(a) of this title who qualifies for a waiver of premiums under section 1912 of this title." 38 U.S.C. § 1922A(a).

Finally, section 1912, entitled "total disability waiver," states that payment of S-DVI premiums may be waived during the continuous total disability of the insured. 38 U.S.C. § 1912(a). If an insured veteran dies without filing an application for waiver, the insured veteran's beneficiary may do so within one year of the veteran's death. 38 U.S.C. § 1912(c).

Ultimately, the appellant argues that she is entitled to an award of Supplemental S-DVI as the beneficiary of her totally disabled veteran husband. However, the Court disagrees.

A. Service Disabled Veterans' Insurance under 38 U.S.C. § 1922(b)

The Court must begin by determining the proper statutory interpretation of 38 U.S.C. § 1922(b). Section 1922(b) states:

> Any person who . . . was otherwise qualified for insurance under . . . subsection (a) of this section, but who did not apply for such insurance and who is shown by evidence satisfactory to the Secretary (A) to have been mentally incompetent from a service-connected disability, (i) at the time of release from active service, or (ii) during any part of the two-year period from the date the service connection of a disability is first determined by the Secretary . . . and (B) to have remained continuously so mentally incompetent until date of death; and (C) to have died before

5

the appointment of a guardian . . . **shall be deemed to have applied for and to have been granted** such insurance, as of the date of death.

(emphasis added).

In reviewing an agency's "construction of the statute which it administers" the Court must first ask whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If congressional intent is clear, the agency and this Court must give effect to "the unambiguously expressed intent of Congress." *Id.* However, if the Court determines that Congress has not addressed the question then "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* According to this Court in *Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013):

> Within the complex veterans benefit scheme, if VA's interpretation of the statute is reasonable, the courts are precluded from substituting their judgment for that of VA, unless the Secretary has exceeded his authority; the Secretary's action was clearly wrong; or the Secretary's interpretation is unfavorable, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions.

Both the appellant and the Secretary argue that the language of the statute is plain and that their interpretations are supported by congressional intent. Both parties agree that the veteran met the requirements to be granted S-DVI insurance under section 1922(b). However, the controversy is over the proper interpretation of the phrase "shall be deemed to have applied for and to have been granted such insurance, as of the date of death" in section 1922(b)(1).

The appellant asserts that under the plain meaning of section 1922(b) "the grant of insurance under [s]ection 1922(b) is treated, by operation of law, as an award under [s]ection 1922(a)" because the statute states that where the requirements are met, a veteran "shall be deemed to have applied for and to have been granted" insurance under section 1922(a). Appellant's Brief (Br.) at 12. The Secretary disagrees and responds that "the language does not expressly state that the terms or criteria in § 1922(a) have been deemed to have been satisfied as [the a]ppellant suggests," but instead the plain language states only that if someone was "otherwise qualified for S-DVI but who did not apply for various listed reasons and who was shown to be mentally incompetent from a service-connected

disability shall be deemed to have applied for and granted S-DVI as of the date of death." Secretary's Br. at 12.

The Court finds the Secretary's interpretation of the plain language unpersuasive. "Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and structure." *McEntee v. M.S.P.B.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005); *see Sharp v. Shinseki*, 23 Vet.App. 267, 271 (2009); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ( "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05, (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994). A fundamental canon of statutory construction is that the words of a statute are given "their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting *Walters v. Metropolitan Ed. Enterprises, Inc.*, 519 U.S. 202, 207 (1997)); *see also Smith v. United States*, 508 U.S. 223 (1993) (citing *Perrin v. United States*, 444 U.S. 37, 42, 100 (1979) (stating that "unless otherwise defined, words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning")); *McGee*, 511 F.3d at 1356; *Trafter*, 26 Vet.App. at 284. It is commonplace to consult dictionaries to ascertain a term's ordinary meaning. *See United States v. Rodgers*, 466 U.S. 475, 479 (1984); *McGee*, 511 F.3d at 1356; *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1353 (Fed. Cir. 2005). According to *Black's Law Dictionary* (8th ed. 2005), "deem" is defined as "[t]o treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have."

The U.S. Court of Appeals for the First Circuit in *P.R. Tel. Co., Inc. v. SprintCom, Inc.* noted that the word "deem" is "of common legal usage." 662 F.3d 74, 95 (1st Cir. 2011). It further explained that the word "deem" "has been traditionally considered to be a useful word when it is necessary to establish a legal fiction . . . by 'deeming' something to be what it is not." *Id.*

Likewise, the U.S. Court of Appeals for the Fifth Circuit (Fifth Circuit) in *Cunningham v. United States,* 67 F.2d 714, 714-15 (5th Cir. 1933) noted that a grant of gratuitous insurance under

the War Risk Insurance Act of 1917,[4] a predecessor to S-DVI, was only a "gratuity in the sense that no premium is exacted of the soldier whose case it fits," and that the holder of the insurance was entitled

> to the same rights and remedies, and governed by the same rules as contracts of insurance issued on applications with the payment of premiums. The place where the language is found, the fact that it is an integral part of the act granting war risk insurance, the language itself "any person shall be deemed to have applied for and to have been granted insurance," under the plainest principles of statutory construction compels this conclusion. Any other would do the greatest violence to the act.

Here, the language of the statute is clear. It states that a veteran who qualifies for insurance under section 1922(a), but who did not apply for such insurance and who is shown to have been mentally incompetent from a service-connected disability and to have remained mentally incompetent until the date of death "shall be deemed to have applied for and to have been granted such insurance, as of the date of death." The statute says nothing about "gratuitous insurance" or that the insurance granted under section 1922(b) is to be treated differently than the insurance granted under section 1922(a). Instead, it provides that if a veteran meets the requirements outlined in sections 1922(a) and 1922(b) then that grant of insurance under section 1922(b) is treated, by operation of law, as an award under section 1922(a). Consequently, under the facts of the case here, legally the veteran applied for and was granted S-DVI under section 1922(a).

However, the grant of insurance under section 1922(a) is not the end of the inquiry. Next, the Court must analyze the language of sections 1922A and 1912 to determine whether the veteran or the appellant is entitled to Supplemental S-DVI.

### B. Supplemental S-DVI under 38 U.S.C. § 1922A

Section 1922A states that "[a]ny person insured under section 1922(a) . . . who qualifies for a waiver of premiums under section 1912 of this title is eligible, as provided in this section, for supplemental insurance in an amount not to exceed $30,000."

---

[4] In pertinent part the War Risk Insurance Act of 1917 stated that "[a]ny person in the active service on or after the sixth day of April 1917, who, while in such service . . . becomes or has become totally and permanently disabled or dies or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance."

Here, the language of the statute is also plain. Section 1922A outlines the requirements a person has to meet to be entitled to Supplemental S-DVI. In accordance with the Court's holding in Part A, the veteran is a person insured under section 1922(a). However, section 1922A also requires a person to qualify for a waiver of premiums under section 1912. Of note, the language of the statute requires only that the veteran qualify for a waiver of premiums, not that he apply for or be in receipt of the waiver. *See* 38 U.S.C. §1922A(a).

Section 1912(a) states that upon application by the insured, the payment of premiums on insurance may be waived during the continuous total disability of the insured, which continues or has continued for six consecutive months, if such a disability began "(1) after the date of the insured's application for insurance, (2) while the insurance was in force under premium-paying conditions, and (3) before the insured's sixty-fifth birthday."

The appellant argues that her husband met the "substantive requirements" for a waiver of premiums. *See* Appellant's Br. at 19. In her brief, she states that because the veteran qualified as a matter of law for S-DVI under section1922(a) and his "pancreatic cancer rendered him totally disabled[,] . . . he met the substantive requirements for [a] total disability waiver under [s]ection 1912" and consequently she should be awarded Supplemental S-DVI under section 1922A. *Id.*

Despite the appellant's argument that the veteran met the *substantive* requirements for a total disability waiver under section 1912, the Court holds that she is not entitled to an award of Supplemental S-DVI because her husband did not meet *all* requirements for a total disability waiver outlined in section 1912(a). First, the veteran's total disability began before the date of the application for insurance. The veteran was awarded 100% disability compensation in February 2006 with an effective date of August 23, 2005. R. at 49-50. In accordance with the language of section 1922(b), the veteran was deemed to have applied for S-DVI on February 22, 2006, the date of his death. R. at 53; *see also* 38 U.S.C. § 1922(b). Therefore, the veteran's total disability did not begin "after the date of the insured's application for insurance" as the statute requires. *See* 38 U.S.C. § 1912. Second, the veteran's total disability did not begin "while the insurance was in force under premium-paying conditions." *Id.* Here, the veteran's insurance was never in force under premium-paying conditions because he was not awarded S-DVI until the date of his death. The veteran would not have been required to pay premiums. Consequently, the veteran does not qualify for a total

9

disability waiver under section 1912; therefore, the veteran is not eligible for Supplemental S-DVI and the Board's decision is affirmed.[5]  *See* 38 U.S.C. §§ 1912, 1922A.

Additionally, the Court notes that the last sentence of section 1922(a) states that in regard to insurance issued under this section, "waivers of premiums pursuant to . . . section 1912 . . . shall not be denied on the ground that the service-connected disability became total before the effective date of such insurance."  However, this does not change the Court's analysis.  As discussed previously, the veteran was ineligibile for a waiver under section 1912, not only because the veteran's total disability did not begin after the date of his  application for insurance, but also because his total disability did not begin while the insurance was in force under premium-paying conditions.  *See* 38 U.S.C. § 1912.  The veteran did not meet the eligibility requirements for a waiver established in section 1912.  Consequently, the veteran would not have been denied a waiver of premiums because his "service-connected disability became total before the effective date of" his S-DVI, but instead because he was not eligible for one according to section 1912.[6]

---

[5] The Court recognizes that it is generally not permitted to affirm the Board's decision on a ground other than that relied on by the Board to support its decision.  *See Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007) (citing *Sec. & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947) and referring to the "*Chenery* doctrine").  To the extent that the Court's holding may be construed as such, the Court notes that the *Chenery* doctrine is not implicated when "it is clear that 'the agency would have reached the same ultimate result' had it considered the new ground." *Fleshman v. West*,138 F.3d 1429, 1433 (Fed. Cir. 1998) (quoting *Ward v. Merit Sys. Prot. Bd.,* 981 F.2d 521, 528 (Fed. Cir. 1992)).  Courts of appeals are not required to remand a case to an agency where remand would be futile: "To remand would be an idle and useless formality. *Chenery* does not require that we convert judicial review of agency action into a ping-pong game." *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6 (1969) (plurality opinion).  In its decision, the Board stated that "the criteria for a waiver of premiums could not possibly have been met under 38 U.S.C. § 1912" because an S-DVI policy was not in effect.  R. at 7.  Consequently, it is clear from this language that the Board would have reached the same ultimate result had it fully considered whether the veteran was entitled to a waiver of premiums under section 1912.

[6] The Court suggests that Congress may want to reconsider the language of 38 U.S.C. § 1922A because it excludes beneficiaries, such as the appellant, from receiving Supplemental S-DVI because of a lack of a premium payment.

### III.  CONCLUSION

The Board's October 20, 2011, decision AFFIRMED.